PEOPLE *v.* SOULE.

1. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER UNCONSTITUTIONAL—POWER TO ADOPT RULES MAY BE AUTHORIZED. Although the legislature may not delegate to boards or commissions legislative power, it may empower them to adopt rules, regulations, and orders to carry out and enforce the legislative will and policy as expressed in the statute so creating and empowering them.

2. SAME—STATUTES—FISH—GAME—POLICE POWER. Act No. 230, Pub. Acts 1925, empowering the conservation

---

[1]Constitutional Law, 12 C. J. §§ 323, 330; [2]Id., 12 C. J. §§ 341, 417, 420, 438; Fish, 26 C. J. § 45; Game, 27 C. J. § 12; 11 R. C. L. 1042; 5 R. C. L. Supp. 626.

commission to promulgate orders for the protection of fish, game, and fur-bearing animals, by suspending or abridging the open season provided by law, is a valid exercise of the police power inherent in the State, and is not open to the objection that it is a delegation of legislative power.

3. FISH—GAME—BELONG TO STATE.

The wild game and fish within its confines belong to the State.

4. CONSTITUTIONAL LAW — DELEGATION OF POWER TO CREATE A CRIME.

Where a statute provides a punishment for violating the regulations or orders of a commission, the power to create a crime is not delegated to the commission.

5. SAME—CONSERVATION COMMISSION—POLICE POWER.

The power conferred upon the conservation commission by Act No. 230, Pub. Acts 1925, § 3, to determine the existence of facts and conditions there clearly outlined, and, pursuant to such determination, promulgate its orders, is a valid exercise of the police power, being distinguishable from an unconstitutional delegation of legislative power.

6. FISH—VIOLATION OF STATUTE—EVIDENCE—FACTS UPON WHICH ORDER BASED NOT OPEN TO TRIAL.

Testimony tending to refute the determined conditions on which the conservation commission's orders regulating the taking of fish in certain waters were based, as authorized by Act No. 230, Pub. Acts 1925, was properly excluded, in a prosecution for violating its provisions, since such orders are not open to trial, where no private property rights are involved.

7. SAME—DUTY OF CONSERVATION COMMISSION TO KEEP RECORDS.

Although neither the act creating the department of conservation, or Act No. 230, Pub. Acts 1925, empowering the conservation commission to promulgate orders for the protection of fish, etc., contain requirements relating to the keeping of records of the department, by necessary implication it is the duty of the conservation commission, either independently or by or through the director of con-

---

[3]Fish, 26 C. J. § 8; Game, 27 C. J. § 2; [4]Constitutional Law, 12 C. J. § 420 (Anno); [5]Id., 12 C. J. § 420 (Anno); [6]Fish, 26 C. J. § 68 [7]Id., 26 C. J. § 55 (Anno).

servation, to keep adequate records and files of its activities.

8. PUBLIC OFFICERS—DIRECTOR OF CONSERVATION.

While the director of conservation is a salaried officer appointed by the governor with certain managerial and administrative authority, he is nevertheless an auxiliary officer and subordinate to the commission of conservation.

9. FISH—WHEN CONSERVATION COMMISSION MAY EXERCISE POWERS.

The conservation commission may exercise the powers authorized by Act No. 230, Pub. Acts 1925, regulating the taking of fish, etc., on the recommendation of the director of conservation after a thorough investigation by him has been made, but his recommendation is not a necessary prerequisite.

10. SAME—COMPLIANCE BY COMMISSION WITH MANDATORY PROVISIONS OF STATUTE—DETAILED REASONS FOR ORDER NOT REQUIRED.

An order of the conservation commission, authorized by Act No. 230, Pub. Acts 1925, regulating the taking of fish in certain waters, which complies with the mandatory essentials of the act as to preceding publication, designation of time, description of the waters or territory, creatures to which it relates, etc., is valid, although it does not contain detailed reasons therefor, which are not required.

Error to Van Buren; Warner (Glenn E.), J.   Submitted January 13, 1927.   (Docket No. 150.)   Decided April 1, 1927.

Lewis Soule was convicted of violating an order of the commission of conservation under Act No. 230, Pub. Acts 1925.   Affirmed.

*W. J. Barnard, H. H. Adams, Harry C. Howard, Martin V. Cook,* and *D. Hale Brake,* for appellant.

*William W. Potter,* Attorney General, and *James E. Chandler,* Prosecuting Attorney, for the people.

[8]Officers, 29 Cyc. p. 1432 (Anno); [9]Fish, 26 C. J. § 55 (Anno); [10]Id., 26 C. J. § 55.

STEERE, J. This case involves the validity of an order made by the commission of conservation on September 21, 1925, reading as follows:

"The director of conservation having made a thorough investigation of fishing conditions in the territory south of town 20 north, recommends certain regulations.

"Therefore, the conservation commission by authority of Act No. 230 of the Public Acts of 1925, hereby orders that for a period of five years from the 1st day of January, 1926, it shall be unlawful to take any kind of fish from the inland waters of the State situate in the counties south of town 20 north, which is the north line of the counties of Arenac, Gladwin, Clare, Osceola, Lake and Mason, by any means whatever except by hook and line during the months of January, February and March of each year, and for such period of five years from January 1, 1926, it shall be unlawful to take any kind of fish in any manner from the inland lakes of the district named, from April 1st to June 15th, both inclusive, in each year, under penalties provided by section 5 of Act No. 230 of the Public Acts of 1925."

Defendant was arrested by a deputy State game warden while engaged in spearing fish through the ice in Pugsley's lake in Van Buren county on January 12, 1926. He was brought before a justice of the peace of that county charged with spearing fish contrary to an order of the commission of conservation under which his conduct was in violation of said Act No. 230, Pub. Acts 1925. He was found guilty by the justice and sentenced to pay a fine of $1, and costs amounting to $5.75. He appealed from this conviction to the circuit court of Van Buren county, where a trial was had before the court without a jury and he was again found guilty.

It is conceded that he was engaged in spearing fish through the ice covering Pugsley's lake on the day charged, and the questions raised relate to the validity

of the order of the commission of conservation promulgated pursuant to the statutes in controversy.

Act No. 230, Pub. Acts 1925, under which this prosecution was had, is entitled in part:

"An act to provide for the better protection and preservation of fish, game and fur-bearing animals and game birds, protected by the laws of this State; to provide a method by which the taking or killing thereof may be regulated and the open season for the taking or killing thereof suspended or abridged in any designated waters or area of this State; to provide a penalty for the violation thereof," etc.

Sections 1, 2 and 3 (in part) read as follows:

"SECTION 1. The commission of conservation of the department of conservation of this State shall, in accordance with the provisions of this act, have power to regulate the taking or killing of all fish, game and fur-bearing animals and game birds protected by the laws of this State, and may suspend or abridge the open season provided by law for the taking or killing of any such fish, animals or game birds in any designated waters or area of this State, whenever in the opinion of said commission of conservation it becomes necessary to assist in the increased or better protection of such fish, game or fur-bearing animals or game birds, or of any particular kinds or species of the same, which may in the opinion of said commission be threatened from any cause or causes with depletion or extermination in said waters or area, and for the purpose of such regulation, suspension, or abridgment, said commission of conservation is hereby empowered to make and promulgate any and all orders and regulations necessary to carry out the provisions of this act and as in this act provided, on the recommendation of the director of conservation after a thorough investigation has been made by him.

"SEC. 2. The term 'waters' as used in this act shall be deemed and construed to mean and include any single or individual inland lake, stream, river, pond or other single or individual inland body of water or any part or portion thereof, and any and all chains, systems or combinations of the same, in any township

or townships, county or counties, within this State and in which any species of fish or water fowl are protected by the laws of this State. The term 'area' as used in this act shall be deemed and construed to mean and include the whole of the State and the whole or any designated portion of any township or townships, county or counties within the State.

"SEC. 3. Whenever said commission of conservation shall determine that any such fish, game or fur-bearing animals or game birds, or any kinds or species of the same, are in danger of depletion or extermination and require additional protection in any designated waters or area within the State, said commission may make and promulgate an order suspending or abridging the open season on said fish, game or fur-bearing animals or game birds, or may regulate the taking or killing thereof in said waters or area as in the judgment of said commission may be necessary or expedient for the further protection of said fish, game or fur-bearing animals or game birds in such waters or area, and shall in said order clearly specify the manner and conditions relative to the taking or killing of the same."

Section 3 further prescribes requisite steps leading up to promulgation of such orders, including publication of notice for three weeks before and periodically during the time such orders are to remain in force, and limits the time in which they may be operative to five years. Section 4 provides the conditions and proceedings under which such order may be modified or suspended. Section 5 provides that violation of any order or regulation properly promulgated and put in force by said commission shall be deemed a misdemeanor punishable upon first conviction by a fine of not more than $100 or imprisonment in the county jail for not more than 60 days, and for each and every second or subsequent offense a stated severer punishment.

The most serious contention urged against the validity of defendant's conviction is that the authority conferred by this act upon the commission of conservation

to promulgate the order in question is an unconstitutional delegation of a legislative function. The overwhelming volume of chaotic and more or less conflicting game and fish laws, general, special, or local, enacted at random with scant reference to harmony, and committed for enforcement to various independent officers and commissions, makes the question of what the game and fish laws in this State actually are a bewildering problem naturally suggestive of some constructive legislation to relieve the situation. Though perhaps indirectly more comprehensive in legal significance, our direct subject for consideration is the import of our statute law touching the single subject of spearing fish. Illustrative of the phenomenal legislative fecundity in fish and game laws, we find ostensibly in force 72 different acts, general, special, and local, which relate to spearing fish, running with variations up and down the scale from brook trout to suckers and sturgeon; 49 acts expressly prohibit or permit spearing, while 23, by the methods prescribed, impliedly permit or prohibit it. Of those statutes two apply to all waters of the State, three to waters of the Great Lakes only and 12 others to all the inland waters of the State; 41 counties are affected by special legislation relative to the Great Lakes, and 54 counties by special or local legislation relative to inland waters. Some counties are favored by a variety of local acts as to waters within their confines. In 27 counties, most of which border upon one of the Great Lakes, there are 18 or more statutes bearing upon the spearing of fish. Amongst these many confusing acts upon the subject is to be found a fairly well-formulated statute which in general prohibits spearing fish in the inland waters of the State, with a *proviso* that all kinds of fish may be speared through the ice during January and February, except brook trout, black bass and wall-eyed pike. Act No. 236, Pub. Acts 1915,

and amendments thereto (Act No. 109, Pub. Acts 1923).     The order in question suspends for the stated period the privileges of that *proviso,* unless the commission sooner rescinds or modifies the same, as it is authorized to do by section 4 of said Act No. 230, Pub. Acts 1925.

Centralization of the various independent conservation activities of the State to a single conservation department under one commission with an auxiliary director of conservation was finally adopted as a legislative policy by Act No. 17, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 783 [1-6]), entitled:

"An act to provide for the protection and conservation of the natural resources of the State; to create a conservation department; to define the powers and duties thereof; to provide for the transfer to said department of the powers and duties now vested by law in certain boards, commissions and officers of the State; and for the abolishing of the boards, commissions and offices the powers and duties of which are hereby transferred."

By section 1 of this act a department of conservation was created with a commission of conservation consisting of seven members, to be appointed by the governor,

"selected with special reference to their training and experience along the line of one or more of the principal lines of activities vested in the department of conservation and their ability and fitness to deal therewith."

They are required to take the constitutional oath of office and file the same with the secretary of State.

Section 2 provides that:

"The powers and duties now vested by law in the public domain commission, the State game, fish and forest fire commissioner, the State board of fish commissioners, the board of geological survey, and the Michigan State park commission are hereby trans-

ferred to and vested in the department of conservation."

It abolishes those separate and often duplicating or inharmonious conservation entities and provides that whenever in any law of the State any reference is made to those boards, commissions, or officers whose duties are thus transferred, it shall be deemed to be made to the department of conservation. It further provides that:

"The commission hereby created may adopt such rules and regulations, not inconsistent with law, governing its organization and procedure, and the administration of the provisions of this act, as may be deemed expedient."

Section 3 makes it the duty of said department through its commission to protect and conserve the natural resources of the State, prevent destruction of timber, promote reforesting the non-agricultural lands, guard against pollution of lakes and streams, foster and encourage the protection and propagation of game and fish. Section 4 requires its director to make a report to the governor and legislature covering the operations of the conservation department for the preceding biennial period by the 15th of January in each year in which the regular session of the legislature is held. That the commission might more efficiently meet changing conditions and carry out the legislative purpose as expressed in the act creating the commission, the act under which this prosecution was brought followed.

The wisdom of this legislation cannot be questioned. The only debatable issue is whether, in conferring authority upon the commission to promulgate rules and orders as provided by the act of 1925, the legislature exceeded its constitutional authority by delegating a legislative power, which concededly may not be done. There are, however, no valid objections aris-

ing from the constitutional separation of the fundamental powers of government into executive, legislative and judicial, which prohibit the creation of administrative boards or commissions empowered within defined limits to adopt rules, regulations and orders to carry out and enforce the legislative will and policy as expressed in the statute so creating and empowering them. This conservation legislation is clearly an exercise of the police power inherent in the State. The wild game and fish (*feræ naturæ*) within its confines belong to the State. No private ownership or private property rights are involved in this inquiry. *McKenney* v. *Farnsworth*, 121 Me. 450 (118 Atl. 237). The commission in promulgating administrative orders within defined legislative limits to carry out the expressed will of the legislature makes no new law. It but exercises a discretion on ascertained conditions under and in pursuance of the law. Punishment for violation of its properly promulgated orders is fixed by the legislature. Where the statute provides a punishment for violating the regulations or orders of a commission, the power to create a crime is not delegated to the commission. *Pierce* v. *Doolittle*, 130 Iowa, 333 (106 N. W. 751, 6 L. R. A. [N. S.] 143).

What the commission was authorized to do under section 3 of the act is to determine the existence of facts and conditions there clearly outlined, and, pursuant to such determination, promulgate its orders. In the leading case of *Locke's Appeal*, 72 Pa. St. 491, it is said on this subject:

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government."

Where occasion has arisen this distinction between

power to pass a law and power conferred by a law upon a designated commission or board to adopt rules or regulations and make orders to administer and carry it into effect according to the manifest legislative purpose has been generally recognized in conservation cases. *United States* v. *Grimaud,* 220 U. S. 506 (31 Sup. Ct. 480), is a leading case which has gone far to make plain that distinction. There an act of congress gave to the secretary of agriculture power to make rules for protection against destruction by fire and depredations upon public forests and forest reservations, attaching a penalty upon violations of any such rules the secretary might thereafter make. Demurrer to defendant's indictment for a violation of such rules was sustained in the district court on the ground that the statute did not define the acts to be punished, and attempted to delegate legislative power to an executive officer. In a unanimous opinion by the United States Supreme Court reversing the decision of the district court it is said in part:

"In the nature of things it was impracticable for congress to provide general regulations for these various and varying details of management. Each reservation had its peculiar and special features; and in authorizing the secretary of agriculture to meet these local conditions congress was merely conferring administrative functions upon an agent, and not delegating to him legislative power. The authority actually given was much less than what has been granted to municipalities by virtue of which they make by-laws, ordinances and regulations for the government of towns and cities. Such ordinances do not declare general rules with reference to rights of persons and property, nor do they create or regulate obligations and liabilities, nor declare what shall be crimes nor fix penalties therefor. * * *

"It is true that there is no act of congress which, in express terms, declares that it shall be unlawful to graze sheep on a forest reserve. But the statutes,

from which we have quoted, declare, that the privilege of using reserves for 'all proper and lawful purposes' is subject to the proviso that the person so using them shall comply 'with the rules and regulations covering such forest reservation.' The same act makes it an offense to violate those regulations, that is, to use them otherwise than in accordance with the rules established by the secretary. * * *

"The secretary of agriculture could not make rules and regulations for any and every purpose. *Williamson* v. *United States,* 207 U. S. 462 (28 Sup. Ct. 163). As to those here involved, they all relate to matters clearly indicated and authorized by congress. The subjects as to which the secretary can regulate are defined. The lands are set apart as a forest reserve. He is required to make provision to protect them from depredations and from harmful uses. He is authorized 'to regulate the occupancy and use and to preserve the forests from destruction.' A violation of reasonable rules regulating the use and occupancy of the property is made a crime, not by the secretary, but by congress. The statute, not the secretary, fixes the penalty."

The principal questions involved here are quite exhaustively discussed in the closely analogous case, in principle, of *Cawsey* v. *Brickey,* 82 Wash. 653 (144 Pac. 938). An act of the legislature of that State gave the county game commissions in their respective counties power to set aside certain parts or portions of their counties, not more than three townships in extent, as game preserves wherein no game, either animals, birds or fish, could be caught or killed within the boundaries stated for such time as they saw fit to designate, requiring notice by three weeks' previous local publication describing the lands so set aside as game preserves. This law was attacked on various grounds, including the claim that it was a delegation of legislative power. Upon the question of constitutionality the court said:

"It seems to us a conclusive answer to this question to say that the law was a complete law in all of its

parts when it left the hands of the legislature. It delegates the making of no substantive law. All the substantive provisions of the law are supplied by the act itself. It merely declares, as a part of the law itself, a condition upon which it shall operate. Neither the law nor any part of it springs from the action of the local game commission. All that the law refers to the commission are questions of fact as to the expediency of its local operation. In this aspect it is certainly no more invalid than local option laws, touching the sale of intoxicating liquors, which are now almost universally held constitutional. Cooley's Constitutional Limitations (7th Ed.), p. 174."

Defendant's counsel cite and urge as "on all fours with the case at bar" *State* v. *Billot*, 154 La. 402 (97 South. 589), wherein the court by a divided opinion held as an unconstitutional grant of a legislative power a statute authorizing the State conservation commission to fix the open season during which deer could be killed and vary it to suit conditions in different parishes. The controlling opinion plainly points out the distinction between that case and this in the following excerpt:

"As the legislature has not fixed an open season in which wild deer may be killed or a closed season in which they may not be hunted, it follows that no statute of the State has been violated, and as the legislature could not vest the conservation commission with legistive power, the indictment against the accused must fall."

It is further urged for the defense that the court erred in excluding defendant from introducing testimony to refute the determined conditions on which the commission's order was based, to the effect that the director of conservation had not made a thorough investigation to determine whether the fish in Pugsley's lake and other waters in that area were threatened with depletion or extermination, and that there was in fact an abundance of fish in those waters.

These orders promulgated within authorized limits are in the nature of police regulations made in the administration of police laws enacted under the general police power of the State, involving no private property rights. They are not analogous to that class of laws dealing with commerce, navigation, public utilities, etc., where private financial interests are involved and provision for initiatory hearing of those whose property rights are affected is authorized or required. Such authorized administration orders auxiliary to purely police legislation touching no private property rights are no more open to trial of the conditions or facts upon which they are based than the legislation authorizing them.

"The result is that in our opinion the action of the board in the case at bar was the working out of details under a legislative act. The board is no more required to act on sworn evidence than is the legislature itself, and no more than in case of the legislature itself is it bound to act only after a hearing or to give a hearing to the plaintiff when he asks for one; and its action is final, as is the action of the legislature in enacting a statute. And being legislative, it is plain that the questions of fact passed upon by the commissioners in adopting the provisions enacted by them cannot be tried over by the court." *Commonwealth* v. *Sisson,* 189 Mass. 247 (75 N. E. 619, 1 L. R. A. [N. S.] 752, 109 Am. St. Rep. 630).

Error is also assigned on refusal of defendant's motion to quash the information on the ground that the order of the commission is fatally defective for want of averments to bring it within the act. It is true that the order is meager in recitals and far from ideal, but neither the act creating the department of conservation nor said Act No. 230, directly involved here, contain any direct or specific requirements relative to records of the department or its commission. By necessary implication, however, it was the duty of the commission either independently or by or through

the director of conservation to keep adequate records and files relating to its activities for abundant reason, including the requirement that the director of conservation shall make a biennial report to the governor and legislature covering the operations of his department, which is in fact the department of conservation primarily under the direction and control of its commission.

While the director of conservation is a salaried officer appointed by the governor with certain managerial and administrative authority, he is nevertheless an auxiliary officer and subordinate to the commission of conservation. Though authorized by the act to appoint such assistants and employees as may be necessary to carry out its provisions, he can only do so with the approval of the commission. The commission is vested with the general administration of the powers and duties of the department and to it is transferred all the powers and duties vested by law in the various previously provided entities consisting of the public domain commission, State game, fish, forest fire commissioners, etc. Upon it is imposed the duty to protect and conserve the natural resources of the State as set out in the act with considerable detail. Act No. 230 provides that the commission of conservation shall, in accordance with the act, have power to regulate the taking and killing of fish, game, and fur-bearing animals, etc., and whenever, in the opinion of said commission, depletion or extermination is threatened in any waters or area of the State, or it becomes necessary to assist in the increase or better protection of particular species or kinds, it is empowered, for the purpose of such conservation, to make and promulgate any and all orders or regulations necessary to carry out the provisions of the act. This it may also do on the recommendation of the director of conservation after a thorough investigation by him has

been made. The law does not say his recommendation is a necessary prerequisite to its making such orders. To make its powers more clear, section 3 provides that whenever said commission shall determine that any of the wild creatures belonging to the State, or any species or kind of the same, are in danger of depletion or extermination, requiring additional protection in any area or waters, the commission may make or promulgate orders suspending or abridging the open season for the same within the period stated.

The order made in this case recited introductorily that the director of conservation had made a thorough investigation of fishing conditions in the territory south of town 20 north, and made certain recommendations. What he recommended is not stated, except as inferable from the order which follows. It was within the power of the commission to make such order and the order as made complies with the detailed requirements of the act as to preceding publication, designation of time, description of the waters or territory, creatures to which it relates, etc. No question is raised but that a copy of said order was published prior to the order going into effect as provided, and filed with the clerk of each county. There is nothing in the law requiring any detailed recitals of the whys and wherefores of such orders, and while the order promulgated may be open to criticism, we conclude that it sufficiently complies either by direct content or implication with the mandatory essentials of the act.

For the foregoing reasons the judgment is affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.