PEOPLE v O'NEAL

Docket No. 58315. Submitted September 14, 1982, at Lansing.—Decided January 10, 1983. Leave to appeal applied for.

Gary G. O'Neal was convicted, on his plea of guilty, of possession of pentazocine, Jackson Circuit Court, Russell E. Noble, J. Defendant appeals, alleging, *inter alia,* that his conviction must be reversed because the Legislature has not declared possession of pentazocine to be a crime and that publication of the classification of pentazocine in the Administrative Code rather than a statute did not afford him fair notice of the proscribed conduct. *Held:*

1. The legislative delegation to the Board of Pharmacy of the decisions regarding the classification of controlled substances is not an unconstitutional delegation of legislative powers. The statutory provisions assigning the classification to the board contain sufficient standards to avoid violation of the doctrine of separation of powers.

2. Similarly, the standards and safeguards employed in the statutes satisfy the requirements of due process.

3. The publication of a controlled substance's classification in the Administrative Code, rather than the statute, did not violate due process. The defendant was afforded fair notice that possession of the substance was proscribed.

4. Classification of pentazocine as a controlled substance by the Board of Pharmacy did not constitute an amendment to a statute, but was the promulgation of a rule pursuant to statutory authority.

5. The trial court's conclusion that defendant's plea was voluntary was not erroneous.

Affirmed.

1. CONSTITUTIONAL LAW — DELEGATION OF POWERS.

The Legislature is without authority to delegate its legislative powers to an administrative agency (Const 1963, art 3, § 2).

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law § 335 *et seq.*
[2] 16 Am Jur 2d, Constitutional Law § 339 *et seq.*
[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 7.
[4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 17.

2. CONSTITUTIONAL LAW — DELEGATION OF POWERS — SEPARATION OF POWERS — AGENCY STANDARDS.

> A determination of whether a statute which allegedly delegates legislative powers to an administrative agency has provided sufficient standards to the agency to satisfy the constitutional requirement of separation of powers requires consideration of three factors: (1) the statute must be read as a whole without isolating the provision in question, (2) the standards should be as reasonably precise as the subject matter requires or permits, and (3) if possible, the statute must be construed in such a way as to render it valid, not invalid, as conferring administrative, not legislative, power and as vesting discretionary, not arbitrary, authority.

3. CONTROLLED SUBSTANCES — CLASSIFICATION OF CONTROLLED SUBSTANCES — BOARD OF PHARMACY.

> The sections of the Public Health Code which assign the classification of controlled substances to the Board of Pharmacy provide the board with standards which are as reasonably precise as the subject matter requires; the assignment of this function to the board is not an impermissible delegation of legislative powers in violation of either the separation of powers or due process (MCL 333.7202 *et seq.;* MSA 14.15[7202] *et seq.).*

4. CONTROLLED SUBSTANCES — DUE PROCESS — NOTICE OF PROSCRIBED CONDUCT.

> Publication of the classification of a controlled substance in the Administrative Code, rather than in the controlled substances statutes, provides a defendant with fair warning that possession of the substance is proscribed and does not violate the requirements of due process.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *Brian E. Thiede,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Karla Kendall),* for defendant on appeal.

Before: DANHOF, C.J., and M. F. CAVANAGH and D. E. HOLBROOK, JR., JJ.

Danhof, C.J. Defendant pled guilty to possession of a controlled substance, pentazocine, in violation of MCL 333.7403(2)(b); MSA 14.15(7403)(2)(b), on January 16, 1981. He was sentenced to serve a term of from one to two years in prison. Defendant appeals his conviction as of right.

Defendant, relying on the decision of another panel of this Court in *People v Turmon,* 117 Mich App 345; 323 NW2d 698 (1982), claims that his conviction must be reversed because the Legislature has never declared possession of pentazocine to be a crime.

The controlled substances provisions of the Public Health Code, MCL 333.7101 *et seq.;* MSA 14.15(7101) *et seq.,* do not contain an exhaustive list of the substances which are controlled thereby. On the contrary, the code purports to grant authority to the State Board of Pharmacy (board) to add to, to delete from, or to reschedule all substances listed in the code. MCL 333.7201; MSA 14.15(7201). In 1979, the board classified pentazocine as a schedule 3 controlled substance. 1979 AC, R 338.3120(2).

In a split decision, *Turmon, supra,* held that the statutory provision granting power to the Board of Pharmacy to classify controlled substances constituted an unlawful delegation of legislative power to an administrative agency. In so ruling, the Court noted that another panel of this Court had earlier reached the opposite conclusion. *People v Uriel,* 76 Mich App 102; 255 NW2d 788 (1977). A majority of the members of the *Turmon* Court decided that the *Uriel* Court had reached the wrong conclusion.

It has long been established that the Legislature is without authority to delegate its legislative powers to an administrative agency. See *King v*

*Concordia Fire Ins Co,* 140 Mich 258; 103 NW 616 (1905); *Michigan C R Co v Michigan R R Comm,* 160 Mich 355; 125 NW 549 (1910). The reason for this prohibition is grounded in two distinct concepts. First, the constitutional requirement concerning the separation of powers precludes the Legislature from delegating its power to make law. Const 1963, art 3, § 2. Secondly, due process requires that the exercise of legislatively conferred powers be carried out in a manner which is neither arbitrary nor capricious. *Westervelt v Natural Resources Comm,* 402 Mich 412; 263 NW2d 564 (1978); *Osius v City of St. Clair Shores,* 344 Mich 693; 75 NW2d 25 (1956). Despite the fact that the "delegation" doctrine has as its source two distinct constitutional considerations, the focus for determining whether either is violated requires an examination of the standards the Legislature has employed to govern an agency's exercise of the power which it has been granted. *Westervelt, supra.*

In deciding the issue of whether the standards are sufficiently definite to satisfy the constitutional requirement of the separation of powers, we are governed by the test announced in *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976):

"While no hard and fast rule exists for determining whether a given statute has provided sufficient standards, a number of guiding principles have evolved in Michigan jurisprudence to assist in making a determination in this case.

"First, the act in question must be read as a whole; the provision in question should not be isolated but must be construed with reference to the entire act. *Argo Oil Corp v Atwood* [274 Mich 47, 53; 264 NW 285 (1935)].

"Second, the standard should be 'as reasonably pre-

cise as the subject matter requires or permits'. *Osius v St. Clair Shores,* 344 Mich 693, 698; 75 NW2d 25; 58 ALR2d 1079 (1956).

"The preciseness of the standard will vary with the complexity and/or the degree to which subject regulated will require constantly changing regulation. The 'various' and 'varying' detail associated with managing the natural resources has led to recognition by the courts that it is impractical for the Legislature to provide specific regulations and that this function must be performed by the designated administrative officials. *People v Soule,* 238 Mich 130, 140; 213 NW 195 (1927). See *United States v Grimaud,* 220 US 506; 31 S Ct 480; 55 L Ed 563 (1910).

"Third, if possible the statute must be construed in such a way as to 'render it valid, not invalid' as conferring 'administrative, not legislative' power and as vesting 'discretionary, not arbitrary, authority'. *Argo Oil Corp v Atwood, supra,* 53."

After examining the standards contained in this act, we cannot agree with the *Turmon* Court's conclusion that the Legislature has left to the State Board of Pharmacy the legislative task of defining what constitutes a crime. The standards contained in the statute include § 7202,[1] which provides:

"In making a determination regarding a substance, the administrator shall consider all of the following:

"(a) The actual or relative potential for abuse.

"(b) The scientific evidence of its pharmacological effect, if known.

"(c) The state of current scientific knowledge regarding the substance.

"(d) The history and current pattern of abuse.

"(e) The scope, duration, and significance of abuse.

"(f) The risk to the public health.

---

[1] MCL 333.7202; MSA 14.15(7202).

"(g) The potential of the substance to produce psychic or physiological dependence liability.

"(h) Whether the substance is an immediate precursor of a substance already controlled under this article."

Section 7203[2] provides:

"(1) After considering the factors enumerated in section 7202, the administrator shall make findings with respect thereto and promulgate a rule controlling the substance if the administrator finds the substance has a potential for abuse.

"(2) If the administrator designates a substance as an immediate precursor, a substance which is a precursor of the controlled precursor is not subject to control solely because it is a precursor of the controlled precursor."

Sections 7206[3] and 7208[4] then provide:

"Sec. 7206. (1) A 7 member scientific advisory commission is created to serve as a consultative and advisory body to the administrator in all matters relating to the classification, reclassification, addition to, or deletion from, all substances presently classified as controlled substances in schedules 1 to 5, or substances not presently controlled or yet to come into being. The scientific advisory commission shall be composed of 2 physicians to be appointed by the director of public health; 2 pharmacists to be appointed by the director of licensing and regulation; the chief of the crime detection laboratory of the department of public health; the director of mental health or his or her designee; and the director of the department of state police or his or her designee. The physician and pharmacist appointments shall be for 2-year terms.

"(2) The administrator shall receive the recommenda-

---

[2] MCL 333.7203; MSA 14.15(7203).

[3] MCL 333.7206; MSA 14.15(7206).

[4] MCL 333.7208; MSA 14.15(7208).

tions of the scientific advisory commission pursuant to administration over the controlled substances for inclusion in or exclusion from schedules 1 to 5, especially in the implementation of scheduled substances changes as provided in section 7201, except that the administrator is not bound by recommendations of the scientific advisory commission.

\* \* \*

"Sec. 7208. (1) Authority to control under this article, does not extend to distilled spirits, wine, malt beverages, or tobacco.

"(2) The administrator shall exclude a nonnarcotic substance from a schedule if the substance, under the federal food, drug, and cosmetic act of 1938, 21 U.S.C. 301 to 392, and the laws of this state, may be lawfully sold over the counter without a prescription." See also MCL 333.7204; MSA 14.15(7204); MCL 333.7227; MSA 14.15(7227); MCL 333.7229; MSA 14.15(7229).

Finally, the act lists five schedules of substances which the Legislature has determined to be in need of control and provides additional standards concerning the schedules into which additional substances are to be placed.[5]

In our opinion, these sections, read together, provide the board with standards which are as reasonably precise as the subject matter dictates. It is readily apparent that decisions relating to the dangers associated with a particular drug require a great deal of administrative expertise, expertise which individual legislators cannot be expected to possess. Furthermore, in view of the constantly changing nature of the subject matter, it is impractical to expect the Legislature to continuously revise the list of controlled substances. These lists must be supplied by designated administrative

[5] MCL 333.7211; MSA 14.15(7211) through MCL 333.7220; MSA 14.15(7220).

officials. See *Dep't of Natural Resources v Seaman, supra,* 309.

We do not find persuasive the conclusion stated in *Turmon, supra,* that the delegation is per se invalid merely because the controlled substance provision of the health code are penal in nature. Many statutes which grant administrative authority to a regulatory agency, statutes which have been upheld by the courts in the face of separation of powers challenges, have involved penal provision. See *Westervelt, supra; People v Soule, supra; Automotive Service Councils of Michigan v Secretary of State,* 82 Mich App 574; 267 NW2d 698 (1978), *app dis* 439 US 973; 99 S Ct 554; 58 L Ed 2d 645 (1978).

In *Turmon, supra,* the Court intimated that a majority of other jurisdictions which have examined the Uniform Act upon which MCL 333.7101 *et seq.* is based have ruled it unconstitutional. Our research has led us to reach the opposite conclusion. The courts of most jurisdictions which have adopted this act, and which have ruled on the issue of whether it constitutes an improper delegation of legislative authority, have upheld it. See *Ex parte McCurley,* 390 So 2d 25 (Ala, 1980); *Ward v State,* 248 Ga 60; 281 SE2d 503 (1981); *State v Kellogg,* 98 Idaho 541; 568 P2d 514 (1977); *Samson v State,* 27 Md App 326; 341 A2d 817 (1975); *State v Boyajian,* 344 A2d 410 (Me, 1975); *State v King,* 257 NW2d 693 (Minn, 1977); *State v Thompson,* 627 SW2d 298 (Mo, 1982); *State v Lisk,* 21 NC App 474; 204 SE2d 868 (1974); *Montoya v O'Toole,* 94 NM 303; 610 P2d 190 (1980); *People v Einhorn,* 75 Misc 2d 183; 346 NYS2d 986 (1973); *State v Sargent,* 252 Or 579; 449 P2d 845 (1969); *State v Peloquin,* 427 A2d 1327 (RI, 1981); *State v Ed-*

*wards,* 572 SW2d 917 (Tenn, 1978); *Threlkeld v State,* 558 SW2d 472 (Tex Cr App, 1977).[6]

It should also be noted that the Uniform Act was patterned after the Federal Comprehensive Drug Abuse Prevention and Control Act, 21 USC 801 *et seq.* In the federal act, Congress has delegated to the Attorney General authority which is similar to the authority given to the board under our act. 21 USC 811. The federal courts have uniformly ruled that such delegation is constitutional. See *United States v Davis,* 564 F2d 840 (CA 9, 1977), *cert den* 434 US 1015; 98 S Ct 733; 54 L Ed 2d 760 (1978); *United States v Erwin,* 602 F2d 1183 (CA 5, 1979), *cert den* 444 US 1071; 100 S Ct 1014; 62 L Ed 2d 752 (1980); *United States v Barron,* 594 F2d 1345 (CA 10, 1979), *cert den* 441 US 951; 99 S Ct 2180; 60 L Ed 2d 1056 (1979); *United States v Gordon,* 580 F2d 827 (CA 5, 1978), *cert den* 439 US 1051; 99 S Ct 731; 58 L Ed 2d 711 (1978); *United States v Alexander,* 673 F2d 287 (CA 9, 1982); *United States v Pastor,* 557 F2d 930 (CA 2, 1977).

Therefore, for the reasons announced earlier, and because the overwhelming number of jurisdictions, both federal and state, which have ruled on this issue have upheld similar legislation, we find that this act satisfies the principle of the separation of powers.

With respect to the issue of whether this delega-

[6] We note that the courts in a minority of jurisdictions have ruled that the act constitutes an unlawful delegation of legislative authority to an administrative agency. See *State v Rodriguez,* 379 So 2d 1084 (La, 1980); *Howell v State,* 300 So 2d 774 (Miss, 1974); *State v Krego,* 70 Ohio Misc 14; 433 NE2d 1298 (1981); *State v Johnson,* 84 SD 556; 173 NW2d 894 (1970); *State v Gallion,* 572 P2d 683 (Utah, 1977). However, we point out that the *Turmon* Court's reliance on *Sundberg v State,* 234 Ga 482; 216 SE2d 332 (1975), is misplaced since the statute which was struck down in that case was the predecessor to the controlled substances act. See *Ward v State, supra.*

tion satisfies due process, the following test announced in *Westervelt, supra,* 443, applies:

> "*In summary,* we rule that a delegation of legislative power to an administrative agency is constitutionally valid when:
>
> &ast; &ast; &ast;
>
> "(2) for purposes of satisfying the Due Process Clause of our Constitution, safeguards, including 'standards', exist, thereby assuring that the public will be protected against potential abuse of discretion at the hands of administrative officials; and, if the 'standards' afforded provide little or no actual due process protection, a court should, in balance, determine whether a sufficient totality of safeguards exists."

Our examination of the statute satisfies us that the safeguards employed in the act satisfy the requirements of due process. As noted earlier, the standards employed are sufficiently definite. Furthermore, § 7201 requires that, in administering the act, the board must comply with requirements of the Administrative Procedures Act (APA). MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* See also MCL 333.7231; MSA 14.15(7231). Finally, the board's high degree of proximity to the elective process (appointment by the governor and confirmation by the senate) insures that the public is not left unprotected from uncontrolled, arbitrary power in the hands of remote administrative officials. MCL 333.16121; MSA 14.15(16121); MCL 333.17721 *et seq.;* MSA 14.15(17721) *et seq.* See *Westervelt, supra,* 448.

In view of the foregoing, we find that the controlled substances provisions of the Public Health Code satisfy both constitutional requirements "essential to a 'delegation of legislative power to an administrative agency' ". *Westervelt, supra,* 449.

Defendant next complains that due process was violated because he was not afforded fair notice of the conduct proscribed. In *Turmon, supra,* the Court held that because the substance pentazocine is listed as a controlled substance in an administrative code, rather than in the statute, defendant could not be charged with notice that his conduct was proscribed. We disagree.

In order to satisfy the requirements of due process, it must be shown that defendant had fair notice that his conduct was unlawful. *Lanzetta v New Jersey,* 306 US 451; 59 S Ct 618; 83 L Ed 888 (1939). The possession of pentazocine is conduct which is clearly proscribed by 1979 AC, R 338.3120(2). The regulation was adopted in accordance with requirements of the APA, and pursuant to the authority of the Public Health Code. The code makes clear reference to the fact that substances which are controlled thereby are subject to reclassification by the Board of Pharmacy pursuant to the requirements of the APA. MCL 333.7201; MSA 14.15(7201). Furthermore, the APA requires that any such classification be published in the State Administrative Code. MCL 24.246; MSA 3.560(146). Since this regulation was published well in advance of defendant's action, defendant cannot complain that he was without notice that the conduct was proscribed. See *State v King, supra; State v Edwards, supra.*

We also reject defendant's claim that the action taken by the board violated Const 1963, art 4, § 25. The action taken by the board did not constitute a statutory amendment. Rather, it constituted the promulgation of a rule pursuant to the authority granted by statute.

Defendant finally contends that his conviction must be reversed because his guilty plea was

induced by promises that his mother would not be prosecuted if he pled guilty. Our examination of the record fails to convince us that the trial court erroneously concluded that defendant's plea was voluntary. *People v James,* 393 Mich 807, 808; 225 NW2d 520 (1975); *People v Perry,* 119 Mich App 98; 326 NW2d 437 (1982).

Affirmed.