LEAGUE GENERAL INSURANCE COMPANY v CATASTROPHIC
CLAIMS ASSOCIATION

Docket No. 93744. Submitted October 14, 1987, at Lansing. Decided
December 21, 1987. Leave to appeal applied for.

The Catastrophic Claims Association (CCA), an unincorporated
nonprofit association created by statute to indemnify insurance
companies for losses sustained under personal protection insur-
ance coverages in excess of $250,000, adopted an operating plan
as required by statute. The operating plan included the method
by which premiums for the catastrophic claim coverage was to
be calculated. League General Insurance Company, a no-fault
insurer required to be a member of the CCA and thus subject to
assessment of premiums by the CCA, brought an action in
Ingham Circuit Court against the CCA claiming that the premi-
ums assessed by the CCA were arbitrary and unreasonable, that
the statutory provision creating the CCA was unconstitutional
because the Legislature failed to set reasonable standards when
it delegated power to the CCA and because the legislation
violated the title-object rule, and that the CCA violated the due
process rights to notice and hearing of the member insurers.
The CCA filed a counterclaim for the unpaid premium assess-
ments. Michigan Mutual Insurance Company brought a similar
action in which it was alleged that the CCA was a state agency
subject to the Administrative Procedures Act, that the CCA had
not complied with the rule-making requirements of the APA in
adopting its operating plan, and that, accordingly, the operat-
ing plan was invalid. The Commissioner of Insurance was
joined as a party defendant in the Michigan Mutual action.
Following joint trial of the two actions, Michigan Mutual
Insurance Company settled with the CCA. Thereafter, the trial
court, Thomas L. Brown, J., held that the CCA was a state
agency, that its operating plan was a rule subject to the APA

REFERENCES

Am Jur 2d, Administrative Law §§ 8, 201-212.

Am Jur 2d, Constitutional Law §§ 52, 84 et seq.

Sufficiency of agency's compliance with requirement of Administra-
tive Procedure Act (5 USCS sec. 553(c)) that agency shall incorpo-
rate in rules adopted concise general statement of their basis and
purpose. 46 ALR Fed 780.

and that the CCA could not levy premiums against plaintiff until it had properly promulgated the plan of operation; however, the court held against the plaintiff on the various other challenges to the validity of the statute creating the CCA. The Catastrophic Claims Association appealed. League General cross-appealed. The Attorney General and the Commissioner of Insurance intervened.

The Court of Appeals *held:*

1. The CCA is a state agency. Accordingly, it is subject to the rule-making requirements of the APA. The operating plan of the CCA was a rule within the meaning of the APA. Since the operating plan was not adopted in accordance with the APA, it was null and void, and the premium assessment computed in accordance with that plan could not be enforced against plaintiff.

2. The provisions of the amendatory section of the Insurance Code which created the CCA fell within the scope of the language of the title of the Insurance Code, and thus was not violative of the title-object clause of the Michigan Constitution.

3. The provisions of the amendatory section creating the CCA, coupled with the APA requirements, provide for adequate notice of hearing and opportunity to be heard and is thus not violative of the constitutional right to due process of law.

4. The amendatory section creating the CCA provided adequate standards under which the CCA was to adopt an operating plan and thus did not constitute an impermissible delegation by the Legislature of its legislative power.

5. The amendatory section creating the CCA clearly provides that the CCA could set premiums in anticipation of losses which ultimately will become payable but do not constitute current obligations.

6. The premiums set by the CCA are not subject to the statutory coordinated benefit reduction.

7. The burden was upon plaintiff to establish the constitutional invalidity of the statute creating the CCA. The fact that the CCA filed a counterclaim for unpaid premiums did not shift that burden of proof.

Affirmed.

1. INSURANCE — CATASTROPHIC CLAIMS ASSOCIATION — ADMINISTRATIVE PROCEDURES ACT — ADMINISTRATIVE RULES.

The Catastrophic Claims Association is a state agency within the meaning of the Administrative Procedures Act; since the Catastrophic Claims Association is not exempt from the provisions of the Administrative Procedures Act, any rule adopted by the

association must be adopted in accordance with the provisions of the Administrative Procedures Act; the association's plan of operation, including the method by which premiums are assessed, is a rule within the meaning of the Administrative Procedures Act (MCL 24.203, 24.207, 500.3104; MSA 3.560[103], 3.560[107], 24.13104).

2. INSURANCE — CATASTROPHIC CLAIMS ASSOCIATION — CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE.

The Catastrophic Claims Association section of the Insurance Code is not violative of the title-object provision of the Michigan Constitution; the purpose of that statutory section is encompassed within the security for loss language of the title of the Insurance Code (MCL 500.3104; MSA 24.13104).

3. INSURANCE — CATASTROPHIC CLAIMS ASSOCIATION — CONSTITUTIONAL LAW — DUE PROCESS — NOTICE OF HEARING.

The provisions of the Catastrophic Claims Association section of the Insurance Code, when coupled with the requirements of the Administrative Procedures Act, provide sufficient notice and opportunity to be heard to the insurance companies subject to the provisions of that section (MCL 500.3104; MSA 24.13104).

4. INSURANCE — CATASTROPHIC CLAIMS ASSOCIATION — CONSTITUTIONAL LAW — DELEGATION OF POWER.

The Legislature in enacting the Catastrophic Claims Association section of the Insurance Code provided adequate standards by which the association was to calculate premiums and thus there was not a constitutionally impermissible delegation of legislative power (MCL 500.3104; MSA 24.13104).

5. INSURANCE — CATASTROPHIC CLAIMS ASSOCIATION — PREMIUMS — LEGISLATIVE INTENT.

The Legislature evidenced a clear intent that the Catastrophic Claims Association could set its premiums in anticipation of losses which ultimately will become payable but do not constitute current obligations (MCL 500.3104; MSA 24.13104).

6. INSURANCE — CATASTROPHIC CLAIMS ASSOCIATION — NO-FAULT — COORDINATED BENEFITS.

Premiums set by the Catastrophic Claims Association for coverage for catastrophic claims under personal protection coverage of an automobile no-fault insurance policy are not subject to the statutory coordinated benefit reduction (MCL 500.3104, 500.3109a; MSA 24.13104, 24.13109[1]).

7. CONSTITUTIONAL LAW — BURDEN OF PROOF — STATUTES.

A party challenging the validity of a statute on constitutional grounds has the burden of proving the invalidity of the statute.

*Miller, Canfield, Paddock & Stone* (by *Lawrence D. Owen, Kirk D. Messmer* and *Ann F. Goodman*), for plaintiiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Donald S. Young, Kathleen M. Lewis* and *Marybeth Targett*), for the Catastrophic Claims Association.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.* and *Deborah K. Canja,* Assistant Attorneys General, for the Attorney General and Commissioner of Insurance.

Before: BEASLEY, P.J., and MACKENZIE and R. P. HATHAWAY,[*] JJ.

BEASLEY, J. Defendant, Catastrophic Claims Association (CCA), appeals from a June 12, 1986, order holding that it was a state agency under the Administrative Procedures Act,[1] that its plan of operation was null and void and of no effect because it was not properly promulgated under the APA, and that premium assessments charged member insurers under the plan of operation were unenforceable until defendant adopted valid rules under the APA. Plaintiff, League General Insurance Company, cross-appeals from several adverse holdings of the same order. We affirm the trial court on all issues.

The CCA is an unincorporated nonprofit association created pursuant to § 3104 of the Insurance Code[2] to indemnify insurance companies for catastrophic claims or the ultimate loss sustained under personal protection insurance coverages in

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*
[2] MCL 500.3104; MSA 24.13104.

excess of $250,000. Each insurer writing automobile no-fault insurance in Michigan must belong to the CCA. The CCA is authorized to assess premiums against each member insurer to cover the expected cost of catastrophic claims and the CCA's expenses. The insurers may charge each policyholder directly for the CCA assessment.

Plaintiff's complaint alleged that the CCA assessed arbitrary and unreasonable premiums, that § 3104 unconstitutionally delegated power and violated the title-object rule,[3] and that the CCA violated due process rights to notice and hearing of the member insurers. Michigan Mutual Insurance Company,[4] in a similar action which was tried jointly with League General's, alleged that the CCA was a state agency under the APA, and that the CCA's plan of operation was invalid because it was not properly promulgated under the APA.

The trial court incorporated its 1981 order for summary judgment into its final opinion and order, ruling: (1) plaintiff had the burden of proving that the CCA assessed arbitrary and unreasonable premiums and had failed to carry that burden; (2) § 3104 did not violate the title-object rule; (3) § 3104 did not unconstitutionally delegate power to the CCA; (4) the CCA's identical assessment rates for coordinated and uncoordinated benefit policies did not deny plaintiff equal protection; (5) the CCA properly could assess premiums to cover anticipated as well as actual losses; (6) the CCA is a state

[3] Const 1963, art 4, § 24.

[4] The Michigan Mutual action was ultimately settled by stipulation for dismissal dated August 20, 1985. Pursuant to an order dated February 8, 1980, the Commissioner of Insurance of the State of Michigan had been joined and added as a party defendant to the Michigan Mutual action. On or about February 1, 1982, a group of motorcycle insurers intervened as plaintiffs in the League General action. None of them has filed an appearance in this appeal. The Attorney General and Commissioner of Insurance were permitted to intervene in this appeal.

agency under the APA, making its plan of operation null and void under the APA; (7) the CCA could not levy premiums against plaintiffs until it properly promulgated the plan of operation; and (8) the CCA's counter-claim to collect plaintiff League General's unpaid premiums was dismissed with prejudice.

We first address the issues raised in the CCA appeal.

I. *Is the CCA a state agency bound by the rulemaking procedures of the APA?* Chapter 3 of the APA[5] contains the rule-making procedures which every state agency must follow. MCL 24. 203; MSA 3.560(103) defines the agencies to which the APA applies:

> (2) "Agency" means a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action. It does not include an agency in the legislative or judicial branches of state government, the governor, an agency having direct governing control over an institution of higher education, or the state civil service commission.

MCL 24.207; MSA 3.560(107) defines the rules which must be adopted pursuant to APA procedures:

> "Rule" means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof, but does not include the following: . . . .

---

[5] MCL 500.231 *et seq.*; MSA 3.560(131) *et seq.*

The APA applies to all agencies and agency proceedings not expressly exempted.[6]

While it is true, as the CCA argues, that the APA definition of agency does not include "associations," it does include "boards." The catastrophic claims statute creates a board of directors, a body specifically included within the statutory definition of agency. That alone leads to the conclusion that the CCA's board of directors, in effect the association itself, must abide by the APA. Additionally, we agree with the reasoning of the trial court, which applied the test of *Advisory Opinion re Constitutionality of PA 1966, No 346:* [7]

> We must, as has been stated, look behind the name to the thing named. We must examine its character, its relations, and its functions to determine, indeed, whether it is an agency or instrumentality of State government. This examination leads us to a consideration of the purposes sought to be accomplished by the law. If those purposes are public purposes, if the work of the entity is a public work, then the State housing development authority is a State agency . . . .

In *Hanselman v Wayne Co Concealed Weapon Licensing Bd,*[8] the Supreme Court applied the *Constitutionality* test to determine whether the Wayne County Concealed Weapon Licensing Board was a state, as opposed to a local, agency. Here, we apply the test and find the CCA to be a state agency. An examination of the CCA's character and relation to the state reveals that the association was created by statute,[9] that the Commissioner of

---

[6] MCL 24.313; MSA 3.560(213).

[7] 380 Mich 554, 571; 158 NW2d 416 (1968).

[8] 419 Mich 168; 351 NW2d 544 (1984).

[9] See *Michigan Canners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Bd (After Remand),* 416 Mich 706, 738; 332 NW2d 134 (1982), rev'd 467 US 461 (1984).

Insurance appoints the directors and serves as ex officio member of the board of directors, and that the CCA levies mandatory assessments against its members and has the power to adopt rules and hear complaints. Its character and relation to the state appear to be those of a state agency. Finally, the CCA's function reveals characteristics of a state agency as well. The CCA's purpose is to maintain a statewide system to provide no-fault automobile insurers indemnification for catastrophic claims. The association protects policyholders from insolvent insurers.

Having determined that the CCA is a state agency, we find no express exception to the APA.[10] We further find the CCA's plan of operation fits the APA definition of a rule. The plan of operation is a "policy . . . of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure, or practice of the agency."

Finally, the CCA's plan of operation must be repromulgated as a rule to be effective. The Attorney General argues that this is nonsensical because the article of the plan of operation dealing with premiums[11] virtually mirrors the language of MCL 500.3104(7)(d); MSA 24.13104(7)(d). This argument fails because nothing required the CCA to use the statutory language when it adopted the plan of operation. Moreover, the fact that one small portion of the plan of operation reflects the statutory language does not save the entire plan from the CCA's failure to promulgate it properly as a rule.

Nor do we accept the Attorney General's argument that MCL 24.207(c); MSA 3.560(107)(c) exempts the CCA's method of calculating premiums

[10] *Martin v Dep't of Corrections,* 424 Mich 553; 384 NW2d 392 (1986).

[11] CCA Plan of Operation, Art IX, § 9.01.

from APA rule-making procedures as a rule establishing or fixing rates or tariffs. The trial court did not require the CCA to promulgate a rule fixing its premiums; rather, it required a rule setting forth the method of arriving at the assessed premiums.

Having affirmed the trial court's holdings in the issues raised in the CCA's appeal, we now address the issues raised in plaintiff's cross-appeal.

II. *Does § 3104 violate the title-object rule?* Const 1963, art 4, § 24, states: "No law shall embrace more than one object, which shall be expressed in its title." This is commonly known as the "title-object rule."

*Greentrees Civic Ass'n v Pignatiello*[12] summarizes the rules relevant to interpreting the title-object clause:

> The purpose of the constitutional limitation is to insure that both the legislators and the public have proper notice of legislative content and to prevent deceit and subterfuge. *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 465; 208 NW2d 469 (1973). However, in effectuating these purposes, the "one object" provision is to be construed reasonably and not in so narrow or technical a manner as to frustrate the legislative intent. *Kuhn v Dep't of Treasury,* 384 Mich 378, 387-388; 183 NW2d 796 (1971). An act may contain all matters germane to its object and any provisions which "directly relate to, carry out and implement the principal object." *Advisory Opinion, supra,* pp 465-467.

The catastrophic claims statute amended[13] the Insurance Code of 1956,[14] which states as its object:

---

[12] 123 Mich App 767, 771; 333 NW2d 350 (1983), aff'd 423 Mich 466 (1985).

[13] 1978 PA 136.

[14] 1956 PA 218; MCL 500.100 *et seq.*; MSA 24.1100 *et seq.*

An act to revise, consolidate, and classify the laws relating to the insurance and surety business; to regulate the incorporation or formation of domestic insurance and surety companies and associations and the admission of foreign and alien companies and associations; to provide their rights, powers, and immunities and to prescribe the conditions on which companies and associations organized, existing, or authorized under this act may exercise their powers; to provide the rights, powers, and immunities and to prescribe the conditions on which other persons, firms, corporations, and associations engaged in an insurance or surety business may exercise their powers; to provide for the imposition of a privilege fee on domestic insurance companies and associations and the state accident fund; to provide for the imposition of a tax on the business of foreign and alien companies and associations; to provide for the imposition of a tax on the business of surplus line agents; to modify tort liability arising out of certain accidents; to provide for limited actions with respect to that modified tort liability, and to prescribe certain procedures for maintaining those actions; *to require security for losses arising out of certain accidents;* to provide for the continued availability and affordability of automobile insurance and homeowners insurance in this state, and to facilitate the purchase of that insurance by all residents of this state at fair and reasonable rates; to provide for certain reporting with respect to insurance, and to prescribe duties for certain state departments and officers with respect to that reporting; to establish and continue a nonprofit malpractice insurance fund to provide malpractice insurance to health providers; to modify and clarify the status, rights, powers, duties, and operations of the nonprofit malpractice insurance fund; to provide for the departmental supervision and regulation of the insurance and surety business within this state; to provide for the conservation, rehabilitation, or liquidation of unsound or insolvent insurers; *to provide for the protection of*

*policyholders and claimants of unsound or insolvent insurers;* and to provide penalties for the violation of this act. [Emphasis added.]

The purpose of the catastrophic claims statute is to indemnify insurers for personal protection insurance claims in excess of $250,000. It is the Legislature's way to implement the objects expressed as "requiring security for losses arising out of certain accidents" and "providing for the protection of policyholders and claimants of unsound or insolvent insurers." Section 3104 does not violate the title-object rule.

III. *Do the provisions for notice and hearing contained in § 3104 satisfy the due process requirements of the Michigan and United States Constitution?* Because plaintiff has a property interest in its ability to transact insurance business, as well as in the premiums it pays, it has the fundamental right to the opportunity to be heard at a meaningful time in a meaningful manner.[15] Where an agency action is legislative in character, as here, less process is due.[16]

Section 3104 provides for the CCA to hear and determine complaints concerning operations. It also provides for the majority of membership to ratify the plan of operations. More importantly, we have held the CCA subject to the APA. The requirements of the APA amply protect the due process rights of the member insurers.

IV. *Does § 3104 contain adequate standards for a valid delegation of legislative authority?* In *Dep't of Natural Resources v Seaman,*[17] the Supreme

---

[15] *Blue Cross & Blue Shield of Michigan v Comm'r of Ins,* 155 Mich App 723; 400 NW2d 638 (1986).

[16] *Kropf v Sterling Heights,* 391 Mich 139, 167; 215 NW2d 179 (1974) (Justice LEVIN concurring).

[17] 396 Mich 299, 309; 240 NW2d 206 (1976).

Court set forth three guidelines to assist the courts in determining whether a given statute provides sufficient standards to limit the exercise of discretion conferred upon an administrative authority:

> First, the act in question must be read as a whole; the provision in question should not be isolated but must be construed with reference to the entire act. *Argo Oil Corp v Atwood,* [274 Mich 47, 53; 264 NW 285 (1935)].
> Second, the standard should be "as reasonably precise as the subject matter requires or permits". *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25; 58 ALR2d 1079 (1956).
> The preciseness of the standard will vary with the complexity and/or the degree to which subject regulated will require constantly changing regulation. The "various" and "varying" detail associated with managing the natural resources has led to recognition by the courts that it is impractical for the Legislature to provide specific regulations and that this function must be performed by the designated administrative officials. *People v Soule,* 238 Mich 130, 140; 213 NW 195 (1927). See *United States v Grimaud,* 220 US 506; 31 S Ct 480; 55 L Ed 563 (1910).
> Third, if possible the statute must be construed in such a way as to "render it valid, not invalid," as conferring "administrative, not legislative" power and as vesting "discretionary, not arbitrary, authority." *Argo Oil Corp v Atwood, supra,* 53.

When § 3104 is read as a whole, the intent of the Legislature is clear. The Legislature sought to assure that any insured party's valid claim for personal protection benefits in excess of $250,000 would be paid. The Legislature created the CCA to administer the reinsurance program. In MCL 500.3104(7); MSA 24.13104(7), the Legislature provided standards to guide the CCA in assessing premiums:

(d) In a manner provided for in the plan of operation, calculate and charge to members of the association a total premium sufficient to cover the expected losses and expenses of the association which the association will likely incur during the period for which the premium is applicable. The premium shall include an amount to cover incurred but not reported losses for the period and may be adjusted for any excess or deficient premiums from previous periods. Excesses or deficiencies from previous periods may be fully adjusted in a single period or may be adjusted over several periods in a manner provided for in the plan of operation. Each member shall be charged an amount equal to that member's total earned car years of insurance providing the security required by section 3101 written in this state during the period to which the premium applies, multiplied by the average premium per car. The average premium per car shall be the total premium calculated divided by the total earned car years of insurance providing the security required by section 3101 written in this state of all members during the period to which the premium applies.

Plaintiff argues that the statute provides inadequate standards to guide the CCA in calculating premiums. The crucial language of the section is the "sufficient to cover expected losses and expenses" language. We interpret "sufficient" to mean adequate but not excessive. The statute clarifies this when it provides for premium adjustments to cover excess or deficient premiums from previous periods. When one considers the complexities of calculating a premium charge for catastrophic claims, it becomes apparent that the Legislature provided reasonably precise standards.

Beyond the relative precision of the amount of premiums chargeable, we reiterate the fact that the APA is in full effect with respect to any rule-

making in which the CCA engages.[18] Also, § 3104 itself contains such safeguards as the requirement that the CCA provide annual reports of its operations to members and file quarterly financial reports with the commissioner. The CCA board also must hear and determine the complaints of member insurers.

Under the third guideline of *Seaman, supra,* we must construe § 3104 as valid, if possible. The reasonably precise standards for calculating premiums, combined with the procedural safeguards of the APA and § 3104 itself, make it possible. We hold the catastrophic claims statute to be a constitutional delegation of power.[19]

V. *Does § 3104 permit the CCA to collect premiums for losses which ultimately will become payable but have not yet accrued?* Subsection (7)(d) of § 3104 provides that the CCA may "charge to members of the association a total premium sufficient to cover the *expected* losses and expenses of the association." A plain and ordinary interpretation of "expected losses and expenses" leads to the conclusion that the Legislature intended that the CCA would collect premiums to cover losses which ultimately will come due but do not constitute current obligations. We will not speculate as to a further meaning beyond the plain and ordinary meaning of the Legislature's own words.[20] Besides, it seems that one of the purposes of § 3104 would

[18] See *Westervelt v Natural Resources Comm,* 402 Mich 412; 263 NW2d 564 (1978) (presence of APA safeguards vital to holding that MCL 299.3; MSA 13.3 was a constitutional delegation of legislative power).

[19] We also hold that, given the effect of the APA, especially its procedures for contested cases, MCL 24.271 *et seq.*; MSA 3.560(171) *et seq.*, the composition of the CCA board of directors comports with due process.

[20] *In re Contempt of Stone,* 154 Mich App 121, 125; 397 NW2d 244 (1986).

be the creation of a reserve fund to cover catastrophes.

VI. *Did the trial court err in determining that MCL 500.3109a; MSA 24.13109(1) does not require the* CCA *to offer lower premiums for coordinated benefit policies than for policies without coordinated benefits?* Plaintiff argues that § 3109a of the Insurance Code requires the CCA to offer lower premiums for coordinated benefit policies. MCL 500.3109a; MSA 24.13109(1) states:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

However, the catastrophic claims statute[21] itself states:

> Except as expressly provided in this section, the association shall not be subject to any laws of this state with respect to insurers, but in all other respects the association shall be subject to the laws of this state to the extent that the association would be were it an insurer organized and subsisting under chapter 50.

The trial court correctly found that to require a premium reduction under § 3109a would directly contravene the mandate of § 3104(1). Where a statute is free from ambiguity, we will not rely on general principles of statutory construction to

[21] MCL 500.3104(1); MSA 24.13104(1).

avoid the plain meaning of the statute.[22] Section 3109a does not prevent the CCA from charging premiums under § 3104 of "an amount equal to that member's total earned car years of insurance . . . written in this state . . . multiplied by the average premium per car."

VII. *Did the trial court err in placing the burden of proof on plaintiff to show that the assessments were arbitrary and capricious?* Each party has the burden to prove its own cause of action.[23] Where a party challenges on a constitutional basis the validity of a statute, that party carries the burden to prove invalidity.[24] Here, plaintiff alleged in its complaint that the requirement in § 3104 that premiums charged to members be based upon the number of automobiles insured per year was arbitrary, unreasonable and in violation of the United States and Michigan Constitutions. Plaintiff had the burden to prove its own cause of action. The CCA's counter-claim for payments of premiums past due did not shift that burden.

Affirmed.

[22] *Voorhies v Judge of Recorder's Court,* 220 Mich 155; 189 NW 1006 (1922).

[23] *Schultz v Sapiro,* 23 Mich App 324; 178 NW2d 521 (1970).

[24] *Beacon Club v Kalamazoo Co Sheriff,* 332 Mich 412; 52 NW2d 165 (1952), app dis 343 US 971 (1952).