LEAGUE GENERAL INSURANCE COMPANY v MICHIGAN
CATASTROPHIC CLAIMS ASSOCIATION

Docket No. 82417. Argued December 6, 1989 (Calendar No. 6). Decided
July 16, 1990.

League General Insurance Company brought an action in the
Ingham Circuit Court against the Michigan Catastrophic
Claims Association, alleging that the premiums assessed mem-
ber insurers for catastrophic claims coverage were arbitrary
and unreasonable. Following a bench trial, the court, Thomas
L. Brown, J., ruled that the MCCA was a state agency, that its
operating plan was subject to the rule-making requirements of
the Administrative Procedures Act, and that the MCCA could
not levy premiums pursuant to the plan until the plan had
been properly promulgated pursuant to the APA. The Court of
Appeals, BEASLEY, P.J., and MACKENZIE and R. P. HATHAWAY,
JJ., affirmed (Docket No. 93744). The Supreme Court initially
denied the MCCA leave to appeal, 431 Mich 854 (1988). After
1988 PA 277 amended MCL 24.203(2); MSA 2.560(103)(2) to
provide that the MCCA was not a state agency subject to the
APA, the Court granted the MCCA's motion for reconsideration
and application for leave to appeal, 431 Mich 871 (1988), and
subsequently determined that it was necessary to ascertain
whether the MCCA was a state agency before the passage of
1988 PA 277.

In a unanimous opinion by Justice CAVANAGH, the Supreme
Court held:

The Michigan Catastrophic Claims Association was created
as a private association, not a state agency, and is not subject
to the Administrative Procedures Act. Therefore, all premiums
assessed upon MCCA member insurers are valid.

1. The no-fault act requires that insurers reimburse their
policyholders for lifetime medical expenses. Because the cost of
reimbursement could be overwhelming to an individual insur-
ance company, the MCCA was created as an unincorporated,
nonprofit association of private insurers to provide reimburse-

REFERENCES
Am Jur 2d, Administrative Law §§ 49 et seq.
See the Index to Annotations under Administrative Law.

ment for each member insurer for all losses sustained in providing personal protection insurance coverage in excess of $250,000 for each occurrence. The MCCA adopted a statutorily required plan of operation, promulgated by its board of directors, including a method to calculate premiums for catastrophic claim coverage and a plan to generate funds by authorizing it to make and collect premium assessments from member insurers.

2. In order to be a state agency, subject to the provisions of the Administrative Procedures Act, an entity must be a state unit or position and must have been created by the constitution, by statute, or by agency action and have not been specifically exempted from the provisions. In addition, it is necessary to look behind the name of the agency and examine its character, relations, and functions. In this case, the Court of Appeals erred in concluding that the MCCA was a state agency: The fact that the MCCA was created by statute is not dispositive of state status, nor does it automatically follow that its board can be classified as having state status; the Commissioner of Insurance does not possess ostensible and pervasive control over the board; the levy of mandatory assessments against MCCA members is for a primarily private purpose—to protect and benefit no-fault insurers, and the incidental benefits to the public of facilitating the availability of automobile insurance does not alter the primary purpose of the benefit; and the power of the MCCA to adopt rules and hear complaints is not determinative of state agency status. Taken as a whole, the characteristics of the MCCA lead to recognition as a private association.

Reversed and remanded.

165 Mich App 278; 418 NW2d 708 (1987) reversed and remanded.

INSURANCE — CATASTROPHIC CLAIMS ASSOCIATION — ADMINISTRATIVE PROCEDURES ACT.

The Michigan Catastrophic Claims Association is not a state agency and is not subject to the rule-making requirements of the Administrative Procedures Act (MCL 500.3104; MSA 24.13104, MCL 24.201 et seq.; MSA 3.560[101] et seq.).

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich, P.C., Noah Eliezer Yanich,* and *Kevin J. Moody*) and *Honigman, Miller, Schwartz & Cohn* (by *John D. Pirich* and *Timothy Sawyer Knowlton*) for intervening plaintiffs.

*Dykema, Gossett* (by *Donald S. Young, Kathleen McCree Lewis, Marybeth Targett,* and *Ronald J. Torbert*) for the defendants.

CAVANAGH, J. We determine in this case whether the Michigan Catastrophic Claims Association (MCCA)[1] is a state agency, and therefore subject to the Administrative Procedures Act.[2] We hold that it is not and reverse the decision of the Court of Appeals.[3]

I

FACTS

The Michigan automobile no-fault act was adopted by the Legislature in 1972,[4] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.* The act requires that insurers pay or reimburse their policyholders' lifetime medical expenses. There is no dollar limit on an insurer's liability for medical, hospital, and rehabilitation benefits under the statute; thus, where injuries are severe, the resulting claims may be extremely high. The cost of covering an insured's catastrophic losses—amounts of more than $250,000—could be overwhelming to an individual insurance company.

Following implementation of the no-fault act, more insurers and reinsurers became aware of the potential for enormous liabilities under the personal protection insurance coverage provisions. Consequently, the MCCA was created in 1978[5] to serve as the means for reimbursing each member

[1] MCL 500.3104; MSA 24.13104.

[2] MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*

[3] *League General Ins Co v Michigan Catastrophic Claims Ass'n,* 165 Mich App 278; 418 NW2d 708 (1987).

[4] 1972 PA 294.

[5] 1978 PA 136.

insurer for all "ultimate loss sustained under personal protection insurance coverages in excess of $250,000.00 in each loss occurrence." MCL 500.3104(2); MSA 24.13104(2).

In this case, the MCCA, an unincorporated, non-profit association of private insurers, adopted a statutorily required "plan of operation," promulgated by its board of directors. The plan includes a method to calculate premiums for catastrophic claim coverage and generate funds to pay for those claims. Pursuant to the plan, the MCCA is authorized to make and collect premium assessments from member[6] insurers. MCL 500.3104(7)(d), (e); MSA 24.13104(7)(d), (e).

The MCCA charged its members for two premium payments, the first being sent out in February 1979. League General Insurance Company, a no-fault insurer required to be a member of the MCCA and, thus, subject to its premium assessments, did not pay the premium. Instead, League General brought an action in Ingham Circuit Court against the MCCA, claiming that the premiums were arbitrary and unreasonable. The MCCA, in turn, filed a counterclaim for the unpaid assessments.

Michigan Mutual Insurance Company brought a similar action in which it alleged that the MCCA was a state agency subject to the APA, that the MCCA had not complied with the rule-making requirements of the APA[7] in adopting its operating plan, and, accordingly, that its plan and its assess-

---

[6] MCL 500.3104(1); MSA 24.13104(1) provides:

> Each insurer engaged in writing insurance coverages which provide the security required by section 3101(1) within this state, as a condition of its authority to transact insurance in this state, shall be a member of the association and shall be bound by the plan of operation of the association.

[7] MCL 24.207; MSA 3.560(107).

ments were invalid. The Commissioner of Insurance was joined as a party defendant, and the actions were joined for trial.[8]

The trial court ruled that the MCCA was a state agency, that its operating plan was a "rule" subject to the APA, and that it could not levy premiums against plaintiff until the plan had been properly promulgated pursuant to the APA. The trial court indicated, however, that the MCCA could offset indemnification payments to nonpaying member insurers to the extent of their unpaid premium assessments if the MCCA promptly promulgated its plan pursuant to APA standards. The MCCA appealed. League General cross appealed. The Attorney General intervened.

The Court of Appeals affirmed the lower court's decision regarding the MCCA's state agency[9] status and that its plan of operation was null and void.[10] The MCCA appealed; this Court denied leave on July 11, 1988. On July 27, 1988, the Legislature passed 1988 PA 277, which amended MCL 24.203(2); MSA 3.560(103)(2) and statutorily pronounced the MCCA not to be a state agency subject to the APA.[11] Consequently, this Court granted the

---

[8] Following trial, Michigan Mutual settled with the MCCA.

[9] "Agency" at the time this case arose was defined by MCL 24.203(2); MSA 3.560(103)(2), as a "state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action. It does not include an agency in the legislative or judicial branches of state government, the governor, and an agency having direct governing control over an institution of higher education, or the state civil service commission."

This statute has since been amended to specifically exclude the MCCA from the definition of agency.

[10] The Court of Appeals also affirmed other rulings of the circuit court favorable to the MCCA but not pertinent to the issue here.

[11] Similarly, the Legislature amended the Insurance Code of 1956 in 1988 PA 349. Section 2 of the amendment provides that any plan adopted by an association (including the MCCA) and any premium or assessment levied against an insurer member of that association is retroactively validated to the date of that association's adoption.

MCCA's motion for reconsideration and application for leave to appeal in a September 28, 1988, order, limited to two issues: (1) whether the amendment operated retroactively, and (2) if so, whether the statute was constitutional. On July 25, 1989, however, the Court determined it was necessary to ascertain whether the MCCA was a state agency before the passage of 1988 PA 277, and issued a supplemental order to that effect. This is the sole issue before us today.

## II

### ANALYSIS

Under the APA, MCL 24.203(2); MSA 3.560(103)(2), an "agency" is defined as "a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action."

As we determined in *Hanselman v Wayne Co Concealed Weapon Licensing Bd,* 419 Mich 168; 351 NW2d 544 (1984), the proper interpretation of this statute requires the presence of two characteristics for an "agency." The entity at issue must be a "state" unit or position and must be created by the constitution, by statute, or by agency action. If these two requirements are met, and it is not specifically exempted,[12] an "agency" is subject to the provisions of the APA. 419 Mich 182.

In *Hanselman,* this Court had to determine

---

However, any consideration by this Court of the validity or retroactivity of these two amendments is unnecessary in light of our determination that, at its inception in 1978, the MCCA was not a state agency.

[12] MCL 24.203(2); MSA 3.560(103)(2), exempts certain agencies from the APA:

> [It] does not include an agency in the legislative or judicial branch of state government, the governor, an agency having direct governing control over an institution of higher education, the state civil service commission . . . .

whether the Wayne County Concealed Weapon Licensing Board was an "agency" within the meaning of the APA, so that it would be required to comply with APA provisions. There was no dispute that the licensing board was created by statute[13] and that it was not specifically exempted from the APA.[14] However, we had to ascertain whether the board was a *state board* in which case it would have been an agency under the APA and subject to those provisions.

The Court of Appeals in the instant case did not embark upon this two-pronged inquiry. It found that because the MCCA statute creates a board of directors,[15] and "boards" are specifically included within the APA's definition of agency, "[t]hat alone leads to the conclusion that the CCA's board of directors, in effect the association itself, must abide by the APA." 165 Mich App 284. Only then did the Court note the oft-cited test enunciated in *In re Advisory Opinion re Constitutionality of 1966 PA 346,* 380 Mich 554, 571; 158 NW2d 416 (1968), as applied by the trial court. The Court of Appeals looked to our decision in *Hanselman* for guidance in applying *Advisory Opinion* to determine whether the licensing board was a state or local agency. After a very brief analysis, the Court of Appeals determined that application of the *Advisory Opinion* test led to the conclusion that the MCCA was indeed a state agency.

In *Advisory Opinion,* the Court had to ascertain whether the "state" housing development authority was an instrumentality of state government. We recognized:

---

[13] MCL 28.426(1); MSA 28.93(1).

[14] We need not discuss whether an exemption under MCL 24.203; MSA 3.560(103) applies to the MCCA, in light of our determination that the MCCA is not a state agency. `

[15] MCL 500.3104(9); MSA 24.13104(9).

> We must . . . look behind the name to the thing
> named. We must examine its character, its rela-
> tions, and its functions to determine, indeed,
> whether it is an agency or instrumentality of State
> government. [380 Mich 571.]

As we stated in *Hanselman,* the *Advisory Opin-
ion* was not exactly analogous to the facts in that
case; however, the analysis was appropriate to
determine whether the board is a state board. 419
Mich 184.

We believe the Court of Appeals erred (a) in not
engaging in the dual analysis required to deter-
mine whether the MCCA's board was a "state"
board, and (b) in applying the *Advisory Opinion*
test and concluding that the MCCA was a state
agency.

The Court of Appeals found that the nature of
the MCCA and its relation to the state rendered it a
state agency. The reasons were: (1) the MCCA was
created by statute, (2) the Commissioner of Insur-
ance appoints the directors and serves as ex officio
member of the board of directors, (3) the MCCA
levies mandatory assessments against its members,
and (4) it has the power to adopt rules and hear
complaints.

As we stated in *Hanselman, supra,* the fact that
an entity is created by statute does not disposi-
tively indicate "state" status. 419 Mich 187. See
also *Schlega v Detroit Bd of Zoning Appeals,* 147
Mich App 79, 81; 382 NW2d 737 (1985). Likewise,
it does not automatically follow that the MCCA's
board can be classified as having state status.

Second, the Court of Appeals stated that the
Commissioner of Insurance appoints the MCCA's
directors and serves as ex officio member of the
board of directors. The Court of Appeals appar-

ently was focusing on MCL 500.3104(11); MSA 24.13104(11).[16]

Despite the fact that the commissioner appoints the five directors to the MCCA board,[17] the commissioner does not possess ostensible and pervasive control because of this appointment power. Although the commissioner serves as an ex officio board member, the commissioner has no voting power[18] and is not counted for purposes of determining whether a quorum is present.

Plaintiff, throughout the proceedings below, also emphasized the commissioner's involvement in adoption of the MCCA plan. No later than sixty days after its initial meeting, the board is required to submit the proposed plan of operation to the commissioner for approval. If no plan is submitted within this sixty-day period, the commissioner must formulate and effectuate a plan *after* consulting with the board. MCL 500.3104(17); MSA 24.13104(17).

The board's plan is presumed to meet statutory requirements if not disapproved by written order of the commissioner within thirty days of its submission. If disapproved, the commissioner must notify the board as to which aspects of the plan are deficient, after which time the board has thirty days to submit a revised plan. Failure to submit a

---

[16] In pertinent part, this provision states:

> The board shall be *initially composed* of 5 members of the association appointed by the commissioner to serve as directors, and the commissioner or a designated representative . . . serving as an ex officio member of the board *without vote*. . . . The initial term of office of a director shall be 2 years. [Emphasis supplied.]

[17] MCL 500.3104(11), (14); MSA 24.13104(11), (14); MCCA Plan of Operation, art VI, § 6.02.

[18] MCL 500.3104(11), (13); MSA 24.13104(11), (13); MCCA Plan of Operation, art VI, § 6.04.

revised plan within this deadline will enable the commissioner to formulate and effectuate a plan. MCL 500.3104(18); MSA 24.13104(18).

The plan of operation and amendments to the plan are subject to majority approval of the board, must be ratified by a majority of the voting membership, and are subject to the commissioner's approval. MCL 500.3104(19); MSA 24.13104(19).

Upon approval by the commissioner *and* ratification by the members of the plan submitted, *or* upon the promulgation of a plan by the commissioner, the insurer members become bound. MCL 500.3104(20); MSA 24.13104(20).

While we recognize that this scheme entails involvement by the commissioner, it fails to rise to the level of dominant state control we deem requisite for state agency status.

Third, the Court of Appeals stated that the MCCA "levies mandatory assessments against its members," 165 Mich App 285, denoting another earmark of a state agency. Plaintiff argued on appeal that because the power to assess members is the power to tax, the MCCA must be a state agency because only the government has the power to tax.

Stating that both taxes and assessments are involuntary extractions of monies which truly private entities cannot impose, plaintiff assailed the MCCA's reliance on *Dukesherer Farms, Inc v Director of the Dep't of Agriculture (After Remand),* 405 Mich 1; 273 NW2d 877 (1979). In that case, the plaintiff, in a class action brought on behalf of the Michigan Cherry Producers, sought to permanently enjoin further implementation of the Michigan Cherry Promotion and Development Program. The Agricultural Commodities Marketing Act, MCL 290.651 *et seq.*; MSA 12.94(21) *et seq.,* instituted this program. The act provided procedures to establish marketing programs for the state's agri-

cultural products. The programs for each commodity were to be funded by an assessment collected from each producer of the commodity. The plaintiff protested the assessments, claiming they constituted taxes and were thus an unconstitutional delegation of the state's taxing power.

This Court affirmed the Court of Appeals ruling that the monies collected from the producers were assessments, not taxes. Although, as plaintiff in the case at bar points out, the marketing act was subject to the APA, 405 Mich 30, the analysis distinguishing an assessment from a tax is nonetheless instructional and applicable to the case at bar:

> "Taxes and assessments do have a number of elements in common. Both are exactions or involuntary contributions of money the collection of which is sanctioned by law and enforceable by the courts. Here, however, the similarity ends." Exactions which are imposed primarily for public rather than private purposes are taxes. Revenue from taxes, therefore, must inure to the benefit of all, as opposed to exactions from a few for benefits that will inure to the persons or group assessed.
>
> The Act in question specifically states that funding is to come from an assessment collected from each producer of the commodity who is directly affected by the marketing program. The Act further states that monies so collected are not state funds and are to be disbursed solely for necessary expenses incurred with respect to each separate marketing program. Thus, the Act itself is consistent with the imposition of an assessment rather than a tax; it is structured to apply to and for the benefit of producers of specific commodities. [405 Mich 15-16. Citations omitted.]

Likewise, the assessments levied by the MCCA are for a primarily private purpose—to protect

and benefit no-fault insurers in Michigan, in particular, smaller insurers, who may have difficulty absorbing a catastrophic claim by an insured. Of course, there are certain incidental benefits to the public because of this arrangement. However, as we noted in *Dukesherer Farms, Inc*, 405 Mich 18, such an incidental advantage does not alter the primary purpose of the benefit.

Accordingly, we find that the monies sought to be collected by the MCCA are assessments, and not taxes.

Fourth, the Court of Appeals noted that the MCCA's power to adopt rules and hear complaints is evidence of a state characteristic. However, we agree with defendants and hold that this characteristic is not determinative of state agency status. Private insurers are empowered to hear complaints as well. MCL 500.2113; MSA 24.12113.

It is obvious that the Legislature intended the Commissioner of Insurance to be involved in the MCCA. However, that participation is not so pervasive or controlling as to render the association a state agency. The provisions highlighted by plaintiff are but a few of those the Legislature enacted under the catastrophic claims act. As we stated in *Hanselman, supra,* 419 Mich 186-187, it is not proper to focus only upon selected characteristics in determining whether an entity is a state agency:

> In evaluating the characteristics of the board to determine whether it is a "state . . . board" or a non-state board, *it is essential to avoid selective consideration of the board's characteristics.* While the . . . Court of Appeals [is] clearly correct in saying that the board possesses the characteristics enumerated in the Court's holding, [it is] in error in not *weighing the importance of these characteristics.* Stated differently, "state" status in this case

is not dependent upon the presence of a particular characteristic or a select group of characteristics. Rather, "state" status is determined by a review of all relevant characteristics which, when *considered together,* indicate the overall character of the board. . . . When considered together, the board possesses considerably more non-state-like characteristics than state-like characteristics and its composite character is not that of a "state . . . board." [Emphasis supplied.]

Accordingly, we find that the Court of Appeals selective focus on certain characteristics of the MCCA impaired its analysis. Taken as a whole, the characteristics of the MCCA lead us to recognize it as a private association.

As noted previously, the commissioner has no voting power on the board and is not statutorily empowered to remove board members. Furthermore, although the MCCA's plan of operation is subject to the commissioner's approval, MCL 500.3104(19); MSA 24.13104(19), this action is no different from the commissioner's review of the rates and plans of private insurers, MCL 500.2107; MSA 24.12107, MCL 500.2408; MSA 24.12408, MCL 500.2108(1); MSA 24.12108(1).

Finally, we address the last prong of *Advisory Opinion, supra,* which instructs that the function of the entity is to be examined in determining its true status. The plaintiff maintains that the MCCA serves a public function and therefore is a state agency. We disagree. As we have already recognized, the association's formation may have bestowed an incidental benefit upon the public by facilitating availability of automobile insurance. Nonetheless, its primary purpose was to protect smaller insurers from the potentially severe financial repercussions of the no-fault act. The MCCA was enacted to create an association of insurance

companies that could more evenly bear the expense of a catastrophic claim, as opposed to an individual company. We believe that this attempt to attain a less burdensome structure for handling catastrophic no-fault claims was intended primarily for private, not public, benefit.

### CONCLUSION

Because we determine today that the MCCA is not a state agency but a private association, the MCCA is not subject to the APA and need not have promulgated its plan of operation pursuant to those requirements. Therefore, all premiums assessed to MCCA member insurers are valid. We remand this case to the Ingham Circuit Court for a determination of the proper fees and assessments due.

RILEY, C.J., and LEVIN, BRICKLEY, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with CAVANAGH, J.