Per Curiam.
 

 In these consolidated cases involving the 1988 amendments of the retaliatory tax provision of the Michigan Insurance Code, MCL 500.1314(5) and (6); MSA 24.1134(5) and (6), defendant Department of Treasury cross appeals the Court of Claims determination that the amendments are unconstitutional on equal protection grounds. Plaintiffs TIG Insurance Company, Inc., and TIG Premier Insurance Company, Inc., (hereafter collectively referred to as TIG) appeal the Court of Claims determination that TIG’s claims for tax years 1990 and 1991 were barred by the ninety-day statute of limitations contained in MCL 205.27a(6); MSA 7.657(27a)(6). We affirm.
 

 i
 

 Like nearly every other state, Michigan imposes a retaliatory tax
 
 [1]
 
 on foreign insurance companies “equal
 
 *222
 
 to that imposed on Michigan companies doing business in those states where the aggregate tax burden on Michigan companies doing business in those states exceeds the burden on companies of those states doing business in Michigan.”
 
 Coates v Attorney General,
 
 120 Mich App 816, 826-827; 328 NW2d 113 (1982). In other words, whenever a Michigan insurer is required to pay taxes, fines, penalties, or other burdens as a requirement of selling insurance in another state, those burdens are compared to the burdens that Michigan law imposes on foreign insurers. If the foreign state’s burdens on Michigan insurers are greater than the burdens Michigan generally imposes on foreign insurers, then insurers from that state writing insurance in Michigan are subject to a retaliatory tax, equal to the difference in the burdens.
 

 Before 1987, foreign insurers were subject to either a premiums tax, MCL 500.440; MSA 24.1440 (repealed), or a retaliatory tax, MCL 500.476; MSA 24.1476 (repealed). The premiums tax was computed as two to three percent of gross premiums collected, depending on the type of insurance sold, and was not imposed on domestic insurers. In contrast, domestic insurers were required to pay a single business tax (SBT), MCL 208.1
 
 et seq.;
 
 MSA 7.558(1)
 
 et seq.,
 
 which
 
 *223
 
 is a value-added tax assessed for the privilege of doing business in Michigan.
 
 Cowen v Dep’t of Treasury,
 
 204 Mich App 428, 432; 516 NW2d 511 (1994). This bifurcated tax structure led to vastly different taxation between foreign and domestic insurers.
 
 [2]
 

 In 1987, this Court held that the premiums tax imposed on foreign insurers violated the Equal Protection Clause because it was not rationally related to the state interest advanced, that is, making insurance coverage more available to Michigan residents.
 
 Penn Mut Life Ins Co v Dep’t of Licensing & Regulation,
 
 162 Mich App 123, 129-130; 412 NW2d 668 (1987). In response, the Legislature enacted 1987 PA 261 and 1987 PA 262, repealing the premiums tax, revising the existing retaliatory tax, and amending the sbt to apply to foreign as well as domestic insurers.
 

 In early 1988, the department determined that the actual insurance company tax revenue for that year was far behind its earlier projections. It appears that one of the reasons for the shortfall was the method used to calculate projected revenues from retaliatory tax assessments; the department, along with the Department of Management and Budget, had erroneously excluded from its projected retaliatory tax computations payments to certain facilities formed as nonprofit organizations of insurers.
 
 [3]
 
 Such third-party assessments were, until that time, generally included as a “burden” of conducting business in Michigan. See
 
 *224
 
 OAG, 1975-1976, No 4874, p 85 (May 22, 1975). Excluding these payments from the computation of projected revenue resulted in an overstatement of the amount of expected revenue from the new retaliatory tax scheme. When actual revenues were lower than projected because of the error involving the definition of “burden,” the Legislature enacted 1988 PA 349, revising the retaliatory tax structure in an attempt to generate increased insurance tax revenue.
 
 [4]
 

 The resultant statutory provisions, MCL 500.134(5) and (6); MSA 24.1134(5) and (6), provide that payments to the enumerated facilities may not be considered “burdens or special burdens” for purposes of computing retaliatory tax liability:
 

 (5) Any premium or assessment levied by an association or facility, or any premium or assessment of a similar association or facility formed under a law in force outside this state, is not a burden or special burden for purposes of a calculation under section 476a, and any premium or assessment paid to an association or facility shall not be included in determining the aggregate amount a foreign insurer pays to the commissioner under section 476a.
 

 (6) As used in this section, “association or facility” means an association of insurers created under this act and any other association or facility formed under this act as a non
 
 *225
 
 profit organization of insurer members, including, but not limited to, the following:
 

 (a) The Michigan worker’s compensation placement facility created under [MCL 500.2301
 
 et seq.;
 
 MSA 24.12301
 
 et seq.].
 

 (b) The Michigan basic property insurance association created under [MCL 500.2901
 
 et seq.;
 
 MSA 24.12901
 
 et seq.].
 

 (c) The catastrophic claims association created under [MCL 500.3101
 
 et seq.;
 
 MSA 24.13101
 
 et seq.].
 

 (d) The Michigan automobile insurance placement facility created under [MCL 500.3301
 
 et seq.;
 
 MSA 24.13301
 
 et seq.].
 

 (e) The Michigan life and health insurance guaranty association created under [MCL 500.7701
 
 et seq.;
 
 MSA 24.17701
 
 et seq.].
 

 (f) The property and casualty guaranty association created under [MCL 500.7901
 
 et seq.;
 
 MSA 24.17901
 
 et seq.].[
 

 5
 

 ]
 

 Thus, payments made to these facilities may not be considered burdens of conducting business in Michigan, and payments made to similar facilities in other states may not be considered burdens of conducting business in those states.' The practical effect of the amendment is to increase the difference between the “burdens” of Michigan and other states, thus increasing the amount of retaliatory tax paid by foreign insurance companies.
 

 
 *226
 
 n
 

 The present case was tried on stipulated facts. Plaintiffs are insurance companies domiciled in California and licensed to do business in Michigan. As entities doing business in Michigan, they are subject to either the SBT, MCL 208.22f; MSA 7.558(22f), or the retaliatory tax, MCL 500.476a; MSA 24.1476(1), whichever is greater. MCL 500.476b; MSA 24.1476(2).
 

 In 1990 and 1991, TIG filed timely tax returns for its SBT and retaliatory tax liabilities and paid the corresponding taxes in full. In 1995 and 1996, TIG filed amended retaliatory tax statements for tax years 1990 and 1991 respectively, this time including in its calculation of Michigan “burdens or special burdens” amounts paid to the Worker’s Compensation Placement Facility, Basic Property Insurance Association, and Automobile Insurance Placement Facility. TIG also filed timely 1996 SBT and retaliatory tax returns and filed amended returns in 1997, using similar calculations and claiming a retaliatory tax refund for tax year 1996. The department denied all three refund requests.
 

 Plaintiffs brought in the Court of Claims two actions against the department that were later consolidated. In its ruling, the Court of Claims held that MCL 500.134(5) and (6); MSA 24.1134(5) and (6) were unconstitutional on equal protection grounds. Specifically, the Court of Claims stated that the impetus for these sections was to raise revenue, rather than a desire to deter other states from discriminating against Michigan insurers. The Court of Claims'further held that the ninety-day statute of limitations contained in MCL 205.27a(6); MSA 7.657(27a)(6) was
 
 *227
 
 constitutional and served to bar TIG’s claims for tax years 1990 and 1991.
 

 m
 

 In its cross appeal, the department argues that the Court of Claims erred in determining that the 1988 revisions to the retaliatory tax provisions violate the constitutional guarantee of equal protection under the law.
 
 [6]
 
 We disagree.
 

 A
 

 Equal protection under the law is guaranteed by both the United States and Michigan Constitutions. US Const, Am XIV; Const 1963, art 1, § 2. These constitutional provisions are coextensive and mandate that persons similarly situated be treated similarly.
 
 Dowerk v Oxford Charter Twp,
 
 233 Mich App 62, 72-73; 592 NW2d 724 (1998). With respect to taxation, a state may not impose “more onerous taxes or other burdens” on foreign businesses than are imposed on domestic businesses unless the discrimination
 
 *228
 
 between foreign and domestic businesses bears a “rational relation to a legitimate state purpose.”
 
 Western & Southern Life Ins Co v State Bd of Equalization,
 
 451 US 648, 668; 101 S Ct 2070; 68 L Ed 2d 514 (1981). To determine whether an equal protection violation exists, this Court must analyze all provisions of the challenged law, along with its policy and objective.
 
 Frame v Nehls,
 
 452 Mich 171, 183; 550 NW2d 739 (1996), This analysis begins with the presumption that the statute is constitutional, which is particularly strong in the case of tax legislation.
 
 Caterpillar, Inc v Dep’t of Treasury,
 
 440 Mich 400, 413; 488 NW2d 182 (1992).
 

 B
 

 When it originally revised the retaliatory tax in 1987, the Legislature expressly provided that “the purpose of [the retaliatory tax] is to promote the interstate business of domestic insurers by deterring other states- from enacting discriminatory or excessive taxes.” MCL 500.476a(2); MSA 24.1476(1)(2). This has been recognized by the United States Supreme Court as a legitimate state purpose.
 
 Western & Southern Life Ins Co, supra
 
 at 671. In the present case we must determine whether the legislation at issue, that is, the 1988 amendments that provided that payments to certain third-party associations were to be excluded from the calculation of “burdens,” were similarly enacted for this legitimate state purpose and whether they are rationally related to this purpose.
 
 Id.
 
 at 668;
 
 Penn Mut Life Ins Co, supra
 
 at 129-130. It is here that the legislation fails to pass constitutional muster.
 

 
 *229
 
 i
 

 The department maintains that the 1987 revisions to the retaliatory tax contemplated that payments to third-party facilities would not be considered Michigan burdens for purposes of retaliatory tax calculation and that, therefore, the exclusions contained in 1988 PA 349 merely clarified the law already in effect. We disagree.
 

 The problem with the department’s argument is that there is simply no evidence that
 
 the Legislature
 
 intended in 1987 to change its definition of “burden.” The retaliatory tax established in 1987 examines payments made for “taxes, fines, penalties, certificates of authority, valuation of policies, or otherwise, or any special burden or other burden.” MCL 500.476a; MSA 24.1476(1). These are precisely the same payments examined by the previous retaliatory tax. MCL 500.476; MSA 24.1476 (repealed). Moreover, there is no evidence of discussions regarding whether other states have similar third-party associations and, if so, whether payments to these associations are excluded as a burden when calculating that state’s retaliatory tax.
 

 To the contrary, it appears that it was the department’s own mistaken belief that payments to third-party facilities were historically not considered “burdens” for retaliatory tax calculations that caused it to miscalculate projected retaliatory tax revenue for 1988.
 
 [7]
 
 This miscalculation and resultant projected
 
 *230
 
 decrease in insurance tax revenues led, in turn, to the Legislature’s enactment of 1988 PA 349, which excluded payments to third-party facilities from the definition of “burden.”
 

 It is abundantly clear that 1988 PA 349 was enacted as a stop-gap measure to raise funds in response to a projected shortfall in insurance tax revenues. This is not a valid reason for discriminating against foreign insurers.
 
 Western & Southern Life Ins Co, supra.
 

 [8]
 

 For this reason, we find unconstitutional the 1988 amendments of the retaliatory tax that exclude third-party assessments as a “burden” for purposes of computing the retaliatory tax.
 

 2
 

 Because we find that the legislation at issue was not enacted for a legitimate state purpose, we need not reach the second inquiry in the equal protection analysis; that is, whether the legislation is rationally related to the purpose.
 
 Id.
 
 We address briefly, however, the department’s argument that the 1988 amendments justifiably differentiate between those assessments paid to state entities and those paid to third-party associations.
 

 We first note that the statute itself does not make this distinction. MCL 500.134(5); MSA 24.1134(5)
 
 *231
 
 excludes “[a]ny premium or assessment levied by an association or facility, or any premium or assessment of a similar association or facility formed under a law in force outside this state.” “Association or facility” is further defined as “an association of insurers created under this act and any other association or facility formed under this act as a nonprofit organization of insurer members.” MCL 500.134(6); MSA 24.1134(6). The statute does not clarify what might be considered a
 
 “similar
 
 association or facility formed under a law in force outside this state.” MCL 500.134(5); MSA 24.1134(5) (emphasis added). On its face, therefore, the statute provides that assessments made to nonprofit organizations of insurer members are not burdens, regardless of where those organizations are located.
 
 [9]
 

 The only real distinction between the nonprofit organizations and state entities is the method by which the state retains control. For example, the Michigan Automobile Insurance Placement Facility is a nonprofit association of insurers with “control” over its funds. MCL 500.3301
 
 et seq.-,
 
 MSA 24.13301
 
 et seq.
 
 However, it was established by the Legislature, and the funds it collects may only be used for the specific purpose of providing insurance coverage for high-risk drivers otherwise unable to obtain insurance—a use mandated by the Legislature. MCL 500.3301; MSA 24.13301.
 

 
 *232
 
 The distinction between assessments by
 
 state-regulated
 
 and
 
 state-controlled
 
 entities is fraught with danger of manipulation. Through the provisions of MCL 500.134(5) and (6); MSA 24.1134(5) and (6), another state may choose to establish an unlimited number of third-party organizations to fund virtually any project it wishes, thus placing onerous burdens on Michigan insurers and virtually guaranteeing that its own insurers avoid Michigan’s retaliatory tax. Consequently, we find the distinction contained in the 1988 amendments is not rationally related to the retaliatory tax’s stated purpose of promoting “the interstate business of domestic insurers.” MCL 500.476a(2); MSA 24.1476(1)(2).
 

 c
 

 The retaliatory tax itself was enacted for the legitimate state purpose of promoting interstate business of domestic insurers by deterring other states from enacting discriminatory or excessive burdens. However, we find that the purpose of the 1988 amendments, which provide the method of calculating the tax and exclude from the definition of “burden” payments to third-party associations, was enacted to generate revenue at the expense of foreign insurers. We further find that the exclusion of third-party assessments in the calculation of burdens for retaliatory tax purposes is not rationally related to the stated goal of promoting the interstate business of domestic insurers. For these reasons, we agree with the Court of Claims determination that MCL 500.134(5) and (6); MSA 24.1134(5) and (6) violate the Equal Protection Clauses of the United States and Michigan Constitutions.
 

 
 *233
 
 rv
 

 The department next argues that 1988 PA 349 does not violate the Uniformity of Taxation Clause contained in Const 1963, art 9, § 3. As our Supreme Court has explained, “[a]s a practical matter, in cases involving taxing statutes there is no discernible difference between the Equal Protection and Uniformity of Taxation Clauses.”
 
 Armco Steel Corp v Dep’t of Treasury,
 
 419 Mich 582, 592; 358 NW2d 839 (1984). Accordingly, for the reasons set forth above, the provisions of MCL 500.134(5) and (6); MSA 24.1134(5) and (6) violate the Uniformity of Taxation Clause. Const 1963, art 9, § 3.
 

 v
 

 We now turn to TIG’s challenge to the Court of Claims determination that its claims for a retaliatory tax refund for tax years 1990 and 1991 were barred by the ninety-day statute of limitations. As a general rule, a taxpayer is permitted four years in which to claim a refund. MCL 205.27a(2); MSA 7.657(27a)(2). However, MCL 205.27a(6); MSA 7.657(27a)(6) treats differently those whose refund claims arose because a Michigan tax statute has been preempted by a constitutional provision or federal law:
 

 [A] claim for refund based upon the validity of a tax law based on the laws or the constitution of the United States or the state constitution of 1963 shall not be paid unless the claim is filed within 90 days after the date set for filing a return.
 

 On appeal, TIG argues that subsection 27a(6) is unconstitutional. However, this Court has recently
 
 *234
 
 held that subsection 27a(6) does not violate the Due Process or the Equal Protection Clauses of the United States or Michigan Constitutions.
 
 American States Ins Co v Dep’t of Treasury,
 
 220 Mich App 586; 560 NW2d 644 (1996). We find no reason, nor has TIG suggested any, to depart from the analysis and holding in that case.
 

 TIG acknowledges that its 1990 and 1991 refund claims were not filed within the ninety days required by subsection 27a(6). Accordingly, the Court of Claims correctly held that TIG’s refund claims for these two years are barred by the statute of limitations.
 

 Affirmed.
 

 [1]
 

 Michigan’s retaliatory tax is currently codified at MCL 500.476a(l); MSA 24.1476(1)(1):
 

 [WJhenever, by a law in force outside of this state or country, a domestic insurer or agent of a domestic insurer is required to make a deposit of securities for the protection of policyholders or otherwise, or to make payment for taxes, fines, penalties, certificates of authority, valuation of policies, or otherwise, or a special burden or other burden is imposed, greater in the aggregate than is required by the laws of this state for a similar alien or foreign insurer or
 
 *222
 
 agent of an alien or foreign insurer, the alien or foreign insurer of that state or country is required, as a condition precedent to its transacting business in this state, to make a like deposit for like purposes with the state treasurer of this state, and to pay to the revenue commissioner for taxes, fines, penalties, certificates of authority, valuation of policies, and otherwise an amount equal in the aggregate to the charges and payments imposed by the laws of the other state or country upon a similar domestic insurer and the agents of a domestic insurer, regardless of whether a domestic insurer or agent of a domestic insurer is actually transacting business in that state or country.
 

 [2]
 

 For éxample, the department represents that in 1985, domestic insurers wrote thirty-two percent of the insurance business in Michigan, while foreign insurers paid more than ninety-nine percent of insurance taxes ($142 million of Michigan’s $143 million insurance tax revenue).
 

 [3]
 

 These facilities are funded by the insurance industry itself, with the goal of spreading the risk of certain coverage over a pool of insurers writing similar policies.
 

 [4]
 

 We note that 1988 SB 707, the precursor to 1988 PA 349, was originally proposed in response to this Court’s decision that the Catastrophic Claims Association was a state agency subject to the provisions of the Administrative Procedures Act (apa), MCL 24.201
 
 et seq.;
 
 MSA 3.560(101)
 
 et seq. League General Ins Co v Catastrophic Claims Ass’n,
 
 165 Mich App 278; 418 NW2d 708 (1987), rev’d 435 Mich 338; 458 NW2d 632 (1990). In addition to later amendments affecting the retaliatory tax, 1988 PA 349 expressly provided that the Catastrophic Claims Association and other third-party facilities were not state agencies and were not subject to the apa. The Supreme Court reversed this Court’s decision in
 
 League General.
 
 435 Mich 351.
 

 [5]
 

 A subsequent modification, 1990 PA 256, added subsection 6(g): “The assigned claims facility created under [MCL 500.3171; MSA 24.13171].” In an unrelated case, the Court of Claims held that 1990 PA 256 violated equal protection principles, because it was enacted for the sole purpose of raising revenue.
 
 State Farm Fire & Casualty Co v Dep’t of Treasury,
 
 Court of Claims Docket Nos. 91-13463-CM and 92-14246-CM. The department did not challenge this ruling, and in fact concedes that TIG is entitled to a retaliatory tax refund for payments made to the Assigned Claims Facility. The department maintains, however, that payments made to the other facilities listed in MCL 500.134(6); MSA 24.1134(6) do not constitute Michigan “burdens.”
 

 [6]
 

 Indeed, the department argues that the disputed legislation does not discriminate against foreign insurers and that there is no need for an equal protection analysis at all. The department posits that all insurers are taxed equally through the sbt, and only where an insurer’s home state imposes excessive burdens on Michigan insurers are the retaliatory-tax provisions implicated. Thus, the department contends, any difference merely reflects classifications adopted in other jurisdictions. The department wbuld thus have this Court hold that Michigan is not responsible for adopting discriminatory classifications because other states have them as well.
 

 It is without dispute that all insurers are subject to the Michigan sbt and that only foreign insurers are subject to the retaliatory tax. The retaliatory tax statute, on its face, clearly discriminates against foreign insurers by imposing separate tax treatment .for insurers based on their state of incorporation. Therefore, despite the department’s claim, equal protection analysis is appropriate.
 

 [7]
 

 The department acknowledges this in its brief, stating that it “had operated at all times during this process [of calculating budget.projeetions for the 1987 and 1988 amendments] under the (apparently mistaken) belief that these facilities were not considered Michigan burdens for retaliatory tax purposes.”
 

 [8]
 

 We note that the California retaliatory tax at issue in
 
 Western & Southern Life Ins Co, supra
 
 at 669, generated approximately one percent of total insurance tax revenue, and thus was “relatively modest.” Michigan’s retaliatory tax in the years 1988-95 generated approximately thirty-three percent of total insurance tax revenue. Although we do not hold that the retaliatory tax must necessarily generate a “relatively modest” amount of revenue, we find that this statistic represents further evidence that the purpose of the 1988 amendments of Michigan’s retaliatory tax was to generate revenue at the expense of foreign insurers.
 

 [9]
 

 As the department notes, payments to other funds or entities consisting of insurer contributions are burdens, such as the Second Injury Fund, MCL 418.501; MSA 17.237(501), the Silicosis, Dust Disease, and Logging Industry Compensation Funds,
 
 id.,
 
 and the Safety Education and Training Fund, MCL 408.1055; MSA 17.50(55).