*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORMAN FUCHS,

      Plaintiff-Appellee,

v

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

      Defendant-Appellant,

and

AMERICAN COUNTRY INSURANCE
COMPANY, INC., and AUTO CLUB INSURANCE
ASSOCIATION,

      Defendants.

UNPUBLISHED
August 17, 2023

No. 361905
Wayne Circuit Court
LC No. 18-015839-NF

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

In this no-fault dispute, defendant Michigan Catastrophic Claims Association (MCCA) appeals by leave granted[1] the trial court's order denying its motion for summary disposition brought pursuant to MCR 2.116(C)(8). On appeal, MCCA contends that the trial court erred in denying its motion for summary disposition because (1) MCCA has no obligation to pay injured insureds directly, and (2) plaintiff's requested declaratory relief sought coverage determinations applicable to his insurers, not MCCA. We reverse and remand for the trial court to enter an order dismissing plaintiff's claims respecting MCCA.

---

[1] See *Fuchs v Mich Catastrophic Claims Ass'n*, unpublished order of the Court of Appeals, entered November 7, 2022 (Docket No. 361905).

-1-

## I. BACKGROUND

This case arises from an August 2001 automobile accident and plaintiff's later efforts to secure continued no-fault benefits following his insurer's insolvency. Plaintiff filed an initial complaint for unpaid no-fault benefits in December 2018, against defendant American Country Insurance Company, Inc. (American Country).

Three years later, plaintiff amended his complaint, adding MCCA and defendant Auto Club Insurance Association (Auto Club) because American Country, the insurer responsible for his statutorily mandated benefits under the no-fault act, MCL 500.3101 *et seq.*, was declared insolvent in August 2020. Plaintiff alleged that Auto Club stood next in the order of priority for payment of these benefits; "MCCA [wa]s statutorily obligated for the ultimate payment of benefits once the total loss paid by American Country exceeds the statutory threshold applicable to the date of loss"; and "MCCA [was] the entity ultimately financially responsible for payment of [plaintiff's] no-fault benefits."

Count I of plaintiff's amended complaint stated a claim for no-fault benefits against "THE DEFENDANT INSURER," though plaintiff did not clarify the particular defendant referenced. Count II sought declaratory relief against the defendant insurer and is similarly unclear as to which defendant it refers. This count merely asserted that "[a]n actual controversy exists between [p]laintiffs [sic] and [d]efendant," and requested the court to determine:

a. The applicability of the No-Fault Act to [p]laintiff's claim;

b. The amount of medical expenses, no-fault interest, actual attorney fees, or other benefits due and owing to [p]laintiff;

c. Whether and in what amount any reduction, setoffs, or reimbursements may be claimed by [d]efendant;

d. The available uninsured/underinsured motorist coverages applicable to the claim;

e. Other determinations, orders, and judgments necessary to fully adjudicate the rights of the parties.

Count III sought declaratory relief against Auto Club. Count IV asserted a claim for declaratory relief against MCCA. This claim alleged, in relevant part, that, because of American Country's insolvency, MCCA is responsible for paying any unsatisfied liability regarding plaintiff's no-fault benefits. Accordingly, plaintiff requested the court to determine what benefits MCCA owed him, seeking the same (a)-to-(e) determinations as described earlier, but specific to MCCA.

MCCA moved for summary disposition under MCR 2.116(C)(8), claiming that it had no obligation to pay plaintiff's no-fault benefits, and plaintiff had no rights against it. MCCA asserted that the Legislature created it to indemnify member insurers for losses sustained in paying personal injury protection insurance (PIP) benefits beyond the catastrophic level and spread the risk of catastrophic claims among all insurers, and that it operates functionally as a reinsurer to indemnify

member insurers for losses exceeding the statutorily specified level. MCCA argued that its obligations only run to member insurers for losses they incur as a result of paying their insureds, and that there is no private right of action or right to any other direct relief for individual insureds. MCCA also argued that plaintiff seemingly sued the wrong association, stating that the Michigan Property and Casualty Guaranty Association (the MPCGA) seemed the entity responsible for payment under the circumstances.

In various later filings related to MCCA's motion for summary disposition, the parties continued to dispute whether plaintiff had any right of action against MCCA, whether individual insureds have any right to payment from MCCA, the nature of the relationship between MCCA and the MPCGA, and these entities' respective roles in the no-fault system and in this case. Plaintiff notably argued at points that MCCA has the power "to take over the adjusting of claims directly and make payments to claimants and medical providers." Relatedly, in requesting a declaration regarding which entity was responsible for his benefits, plaintiff asserted that the court could declare his rights under the no-fault act and order the MCCA to (1) adjust his claim or (2) appoint another member insurer to do so. In turn, MCCA countered that this relief was not pleaded in the complaint—similar to all plaintiff's arguments regarding the MPCGA—nor supported by plaintiff's cited authority. Plaintiff ultimately explained that he was "merely seeking a declaration of his rights under the no-fault act to receive benefits from the MCCA in its capacity as both the 'reinsurer' of catastrophic claims arising under the no-fault act and its role as the ultimate payor in situations where both the MCCA and the MPCGA are implicated."

The trial court, without holding a hearing or explaining its reasoning, denied MCCA's motion for summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2018).

> A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [*Id*. at 159-160 (citations omitted, emphasis in original).]

We also review interpretation of the no-fault act's statutory provisions de novo. *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 272; 951 NW2d 731 (2019). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Id*. (quotation marks and citation omitted). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Id*. (quotation marks and citation omitted). "However, what is '[clear] and unambiguous' often depends on one's frame of reference." *US Fidelity Ins & Guarantee Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009) (quotation marks and citation omitted). "In order to ascertain this frame of reference, the contested provisions must be read in relation to the statute as a whole and work in mutual agreement." *Id*.

-3-

## III. ANALYSIS

MCCA argues that the trial court erred in denying its motion for summary disposition because (1) it is not an insurer and has no obligation to pay injured insureds directly concerning their no-fault benefits, and (2) plaintiff's requested declaratory relief sought coverage determinations applicable to his insurers, not MCCA. We agree.

According to MCCA, the trial court erred by denying its motion for summary disposition because, as a matter of law, plaintiff has no claim against it for declaratory or other relief related to his no-fault benefits. MCCA argues that, under the applicable statutes, which plaintiff seems to misunderstand or misapply, it is not an insurer of any individual insured; instead, its role is merely to indemnify member insurers under certain circumstances. Relatedly, plaintiff's claim for declaratory relief against MCCA sought coverage determinations applicable to his insurers, not MCCA. For these reasons, MCCA asserts that no actual case or controversy exists between it and plaintiff, and that dismissal is required.

In *Dairyland Ins Co v Mews*, ___ Mich App ___, ___; ___NW2d ___ (2023), slip op at 13-14, this Court recently explained:

> The MCCA is an unincorporated, nonprofit association, the purpose of which is to reimburse or indemnify member insurers for PIP losses they incur in excess of "catastrophic" levels. MCL 500.3104(1) and (2). The primary purpose in creating the MCCA was to "protect smaller insurers from the potentially severe financial repercussions of the no-fault act." *League Gen Ins Co*[ *v Michigan Catastrophic Claims Ass'n*], 435 Mich [338,] 350[; 458 NW2d 632 (1990)]. In view of this purpose, the Supreme Court has rejected the contention that the MCCA is a state agency with a public function; rather, the Court has deemed the MCCA to serve a private benefit, as opposed to a public one. *Id*. at 350-351.

> * * *

> Indeed, by definition, the MCCA does not provide or make available services or privileges to members of the public; rather, it solely provides reimbursement to member insurers for catastrophic claims.

The Legislature created MCCA and it is governed by MCL 500.3104. MCL 500.3104(1) provides:

> The catastrophic claims association is created as an unincorporated, nonprofit association. Each insurer engaged in writing insurance coverages that provide the security required by section 3101(1) in this state, as a condition of its authority to transact insurance in this state, shall be a member of the association and is bound by the plan of operation of the association. An insurer engaged in writing insurance coverages that provide the security required by section 3103(1) in this state, as a condition of its authority to transact insurance in this state, is considered to be a member of the association, but only for purposes of premiums under subsection (7)(d). Except as expressly provided in this section, the

-4-

association is not subject to any laws of this state with respect to insurers, but in all other respects the association is subject to the laws of this state to the extent that the association would be if it were an insurer organized and subsisting under chapter 50.

MCL 500.3104(2) provides that "the association shall provide and each member shall accept indemnification for 100% of the amount of ultimate loss sustained under personal protection insurances in excess of" certain amounts that vary depending on when the policy at issue was issued or renewed.

MCL 500.3104(3) permits an insurer to withdraw from the association "only on ceasing to write insurance that provides the security required by section 3101(1) in this state." MCL 500.3104(4) requires that an "insurer whose membership in the association has been terminated by withdrawal continues to be bound by the plan of operation, and on withdrawal, all unpaid premiums that have been charged to the withdrawing member are payable as of the effective date of the withdrawal." MCL 500.3104(5) provides:

> An unsatisfied net liability to the association of an insolvent member must be assumed by and apportioned among the remaining members of the association as provided in the plan of operation. The association has all rights allowed by law on behalf of the remaining members against the estate or funds of the insolvent member for money due the association.

MCL 500.3104(7) in relevant part provides:

> The association shall do all of the following on behalf of members of the association:

> (a) Assume 100% of all liability as provided in subsection (2).

> (b) Establish procedures by which members must promptly report to the association each claim that . . . may reasonably be anticipated to involve the association if the member is ultimately held legally liable for the injuries or damages.

> \* \* \*

> (d) In a manner provided for in the plan of operation, calculate and charge to members of the association a total premium sufficient to cover the expected losses and expenses of the association that the association will likely incur during the period for which the premium is applicable. . . .

> \* \* \*

> (g) Establish procedures for reviewing claims procedures and practices of members of the association. If the claims procedures or practices of a member are considered inadequate to properly service the liabilities of the association, the association may undertake or may contract with another person, including another

member, to adjust or assist in the adjustment of claims for the member on claims that create a potential liability to the association and may charge the cost of the adjustment to the member.

Essentially, MCCA charges premiums to its insurer members, and those premiums are then used to indemnify insurers on catastrophic claims.

Plaintiff's amended complaint alleged that, "[p]ursuant to MCL 500.3104(5) and the MCCA's Plan of Operation," when a member becomes insolvent, "any liability of such insurer left unsatisfied shall be apportioned among the remaining members of the Association." This is true; any liability owed to MCCA must be apportioned among the remaining members. But to the extent the complaint implies that benefits potentially owed to an injured individual by an insolvent insurer must be apportioned among the remaining members, such is inaccurate. MCL 500.3104(5) does not contemplate apportioning a claim for benefits by an individual among members of the MCCA. The unambiguous statutory language of MCL 500.3104(5) contemplates how, in the event a member becomes insolvent, any unsatisfied liability *owed by the member to the MCCA* will be recovered. The statute says nothing about the MCCA paying anything to injured claimants themselves. Indeed, MCL 500.3104 specifies throughout that MCCA's duties run only to its member insurers.

Plaintiff alleged further that, because of American Country's insolvency, MCCA is "responsible for paying any unsatisfied liability for no-fault benefits which have been paid, or are payable, to or on behalf of [p]laintiff" from his August 2001 injury. Again, this is false. MCL 500.3104(2) speaks of MCCA indemnifying members—i.e., no-fault insurers—for claims in excess of certain monetary thresholds. It says nothing of MCCA paying anything directly to injured insureds. In *US Fidelity*, 484 Mich at 18, our Supreme Court explained that "the MCCA is not a no-fault insurer, and consequently it is also not a reinsurer. [T]he MCCA is not a no-fault insurer, but, rather, an indemnitor of no-fault insurers for benefits in excess of the statutory threshold . . . ." "Indemnification is not a contingent plan like an insurance plan. Instead, it is a set security meant to assist against certain circumstances." *Id*. at 17-18.

In sum, MCCA is not an insurer, but simply an association meant to indemnify member insurers for catastrophic claims. Given American Country's insolvency, which no-fault insurer(s) remain in the order of priority to pay his benefits should be determined. Once established, such insurer may have a claim for indemnification against MCCA. But plaintiff, as an individual insured, has no direct claim against MCCA. Accordingly, the trial court erred by not granting MCCA's motion for summary disposition under MCR 2.116(C)(8).

To the extent that plaintiff argued below and in his answer to MCCA's application for leave to appeal that summary disposition under MCR 2.116(C)(8) was improper because of the dispute between MCCA and the MPCGA over responsibility for payment of his no-fault benefits and MCCA's power to take over adjustment of claims and pay insureds and medical providers directly, plaintiff has not filed a brief on appeal and thus makes no such arguments here. Nevertheless, these points were never pleaded in plaintiff's amended complaint and, therefore, should not be considered by this Court in evaluating MCCA's motion under MCR 2.116(C)(8). See *El-Khalil*, 504 Mich at 159. Notably, plaintiff's answer to MCCA's application for leave to appeal conceded that this case is to be decided on the pleadings alone, and this Court explicitly limited the instant

appeal to the MCR 2.116(C)(8) issue in granting MCCA leave to appeal. *Fuchs v Mich Catastrophic Claims Ass'n*, unpublished order of the Court of Appeals, entered November 7, 2022 (Docket No. 361905) ("This appeal is limited to the issues raised in the application and supporting brief."). For these reasons, we decline to address these additional arguments.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick